**Bernard W. McNAMARA et al.,
Plaintiffs,
v.
Robert JOHNSTON et al., Defendants.
No. 71 C 654.**

United States District Court,
N. D. Illinois, E. D.
June 21, 1972.

William J. O'Brien, John L. Kilcullen, Washington, D. C., for plaintiffs.

Katz & Friedman, Chicago, Ill., and Stephen I. Schlossberg, Gen. Counsel UAW, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motion of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter referred to as the "UAW") for leave to intervene as a defendant in the above-entitled cause pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

Plaintiffs are members of the UAW, a labor organization as defined by section 3(i) of the Landrum-Griffin Act, 29 U. S.C. § 402(i). Plaintiff Bernard W. McNamara, in addition to being a member of the UAW, is the Recording Secretary of UAW Local 558. Plaintiffs purport to bring this action "as members of UAW for the benefit of the union and its members."

Defendants are Robert Johnston, Regional Director of UAW Region 4 which encompasses, *inter alia*, the State of Illinois, and chairman of the UAW Illinois State Community Action Program Council ("Illinois CAP"); James Wright, chairman of the UAW Chicago Area CAP Council ("Chicago CAP"); Gerald Peterson, whose connection with the UAW is not alleged in the complaint; Emil Mazey, Secretary-Treasurer of the UAW International; and Leonard Woodcock, International President of the UAW.

The facts, as alleged by the complaint, are as follows: Plaintiffs, employees of the Fisher Body Plant of General Motors Corporation at Willow Springs, Illinois, are represented in collective bargaining matters by Local 558 of the UAW. Pursuant to a collective bargaining agreement, plaintiffs are required to become and must remain dues-paying members of the UAW in order to retain their employment. The amount of such dues is established by the UAW International and was set at the time of the complaint at the equivalent of two hours pay per member per month.

The complaint states:

"Pursuant to the provisions of the UAW Constitution and administrative instructions issued by the President of UAW International on May 19, 1969 . . . each local union in the State of Illinois, including Local Union 558, is required to set aside a minimum of 3% of each member's monthly membership dues as a per capita payment to [Illinois CAP], and to remit such money to [Johnston]. Upon receipt of said money [Johnston] allocates it proportionally to [Illinois CAP] and [Chicago CAP]. Following such allocation Defendants, JOHNSTON, WRIGHT and PETERSON exercise custody and control over said funds, and all decisions respecting the

use and expenditure of such funds are made by them."

On May 6, 1969, the membership of UAW Local 558 adopted the following resolution:

"Resolution—the membership of UAW Local 558, party to a Union Shop, deny use of all or any part of their dues money in support of any political candidate, political organization, state or federal legislation, any organization or group engaged in violence or using the threat of violence, the illegal seizure or destruction of property, engaged in social disorder, promoting racial agitation, and any organization or group that preaches, promotes or identifies with Marxist or communist ideology. Furthermore, this membership does not authorize any person, organization or group to act as spokesman for UAW Local 558 on any political endorsement, legislative endorsement, social problem or movement of any kind unless or until the membership has clearly made such an endorsement by voting 68% in support by secret ballot using the dues check-off lists to verify voters eligibility."

Notice of the resolution was given to Johnston and Mazey by separate letters written by McNamara on June 24, 1969.

Plaintiffs allege that the dues money turned over to the Illinois and Chicago CAP's were used to support various political candidates including Adlai Stevenson III, a candidate for the United States Senate in 1970.

In Count I of the complaint, Plaintiffs allege that:

". . . the aforesaid wrongful and unauthorized diversion of union money and assets into political campaigns of candidates for public offices constitutes a breach of the statutory duty of fidelity and trust owed by said Defendants, and each of them, in one or more of the following ways:

A. By failing to hold such money and property for the benefit of said labor organization and its members as required by Section 501(a) of the Labor Management Reporting and Disclosure Act (29 U.S.C., Section 501(a)).

B. By failing to manage, invest and expend said money and property in accordance with the constitution, bylaws and resolutions of said labor organization.

C. By ignoring said resolutions and dealing with the members of said labor organization as an adverse party, and by expending said moneys and property in a manner that conflicts with the interest of the members of said labor organization.

D. By paying and expending said moneys and property to and for candidates for Federal office in violation of the Federal Corrupt Practices Act, 18 U.S.C. Section 610."

In Count II of the complaint, Plaintiffs allege that:

". . . Defendants, MAZEY and WOODCOCK, instructed, controlled and directed Defendants, JOHNSTON, WRIGHT and PETERSON, in violation of their aforesaid statutory duty of fidelity and trust to hold such money solely for the benefit of the union and its members—to unlawfully and wrongfully divert a large and substantial part of said money into the political campaign coffers of candidates for public office, including federal elections . . . ."

In its memorandum of law in support of the instant motion, the UAW notes that the UAW Constitution sets forth a number of the union's objectives:

". . . To engage in legislative, polit-election of candidates and the passage of improved legislation in the interest of all labor. [UAW Const., Art. 2, § 4].

. . . To engage in legislative, political, educational, civic, welfare and other activities which further, directly or indirectly, the joint interests of the membership of this organization in

the improvement of general economic and social conditions in the United States of America. . . . [UAW Const., Art. 2, § 5]."

Article 23, section 1 of the UAW Constitution sets forth the criteria for CAP Councils:

"The objective and purpose of the UAW Community Action Program Councils are to develop, promote and implement policies and programs designed to improve and enrich the quality of American life. The UAW [CAP] shall engage in community, civic, welfare, education, environmental, cultural, citizenship-legislative, consumer protection, community services and other activities to improve the economic and social conditions of UAW members and their families and to promote the general welfare and democratic way of life for all people."

Article 7, section 2 of the UAW Constitution authorizes the expenditure of union funds "to achieve the objectives and purposes of this organization as set forth in this Constitution . . . ."

The UAW asserts that the complaint accuses the named defendants with engaging in conduct mandated by the UAW Constitution, not violative of it. This Court has already noted that the UAW Constitution is replete with provisions demonstrating that a major union objective is to engage in the American political arena in order to promote legislation beneficial to union members and to elect candidates sympathetic to union causes. There is nothing in the complaint, the UAW asserts, which demonstrates that the activities of the defendants were *sub rosa* or part of some conspiracy to defraud the union; on the contrary, the union asserts, all activities complained of were openly done and observable by all union members.

Plaintiffs predictably argue that the UAW's position

"is not only legally irresponsible but is also a factual misstatement as to what the UAW constitution provides. The

rather general references in the UAW constitution to political action can hardly be construed as mandating specific contributions to particular candidates. What UAW Counsel are really contending is that the constitution and the convention proceeding must be read as giving the union officers the broad discretion to pick and choose the political candidates and ideological causes that are to be showered with union money."

In Holdeman v. Sheldon, 204 F.Supp. 890 (S.D.N.Y.), aff'd 311 F.2d 2 (2nd Cir. 1962), an officer of a union brought suit on behalf of the union against other officers charging them with improper expenditure of union funds. The funds alleged to be wrongfully expended were payments to two union employees after their termination from employment. The union sought leave to intervene which the Court denied, stating:

"This court is of the opinion that the procedural device of intervention which the union seeks to employ should not be granted if the charges alleged in the complaint demonstrate that the interests of the union are in conflict with those of the defendant" 204 F.Supp. at 893.

In Highway Truckdrivers Local 107 v. Cohen, 182 F.Supp. 608 (E.D.Penn.), aff'd, 284 F.2d 162 (3rd Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), union members sued union officers claiming that the officers had engaged in a "continuing mass conspiracy to cheat and defraud the union of large sums of money . . . ." The Court rejected the union's attempt to pay the legal expenses of the officers, stating:

"To allow a union officer to use the power and wealth of the very union which he is accused of pilfering, to defend himself against such charges, is totally inconsistent with Congress' effort to eliminate the undesirable element which has been uncovered in

the labor-management field." 182 F. Supp. at 620–21.

However, earlier in the opinion, the Court stated:

"There are undoubtedly situations in which a suit against a union officer would have a direct and injurious effect upon the union itself or would in reality be directed at the union. In such a situation the union would have the power to lend its financial support to such officer. When the question of whether the union has a sufficient interest to spend large sums of money to defend such a suit arises, it must ultimately be resolved by the court." *Id.* at 620.

This Court is of the opinion that the UAW's motion for leave to intervene should be granted. Having thoroughly examined the pleadings, this Court is impressed with the open manner in which most of the complained of activity was conducted. The union's constitution is replete with provisions specifically authorizing the expenditure of union funds for political purposes. Plaintiffs' contention that these provisions cannot be used as a basis for contributing to specific candidates or causes is absurd; surely, Plaintiffs do not expect the union to amend its constitution every time the union members desire to endorse a particular candidate or support a particular issue. Constitutions, by their nature, speak in generalities.

Plaintiffs' quarrel in the instant case is not with the union officers individually. As far as this Court can see, there is no "mass conspiracy" to defraud the union; the complaint discloses no midnight visits to the union vaults. Instead, the bulk of Plaintiffs' complaint is directed at activity which is, impliedly at least, sanctioned by the UAW Constitution. Therefore, this Court holds that the union's interests are not so adverse to the interests of those officers named as defendants that intervention should be denied.

Accordingly, it is hereby ordered that the motion of the UAW for leave to intervene as a defendant in the above-entitled cause is granted.