367 F.Supp. 1102 (1973)
Ralph BARBER, Plaintiff,
v.
Harold J. GIBBONS and Ernest Neidel, Defendants.
No. 72 C 669(2).
United States District Court, E. D. Missouri, E. D.
September 10, 1973.
Burton H. Shostak, Kramer, Chused, Kramer, Shostak & Kohn, St. Louis, Mo., for plaintiff.
Merle L. Silverstein, Rosenblum & Goldenhersh, Clayton, Mo., and Harry H. Craig, Wiley, Craig, Armbruster & Wilburn, St. Louis, Mo., for defendants.

MEMORANDUM
REGAN, District Judge.
Plaintiff, a member in good standing of Teamsters Local Union No. 688, seeks a declaratory judgment respecting the validity of the Union's "Political Fund" together with injunctive relief ancillary thereto. We have jurisdiction under Section 1331, 28 U.S.C. The facts are not in dispute and have been stipulated.
Teamsters Local Union No. 688, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a labor organization within the meaning of Section 610, 18 U.S.C. It has 13,677 dues paying members. The monthly dues range from $6 to $14.50, depending on the member's wage scale. Plaintiff pays the maximum dues of $14.50 per month. Defendant Gibbons is the Secretary-Treasurer of the Union and defendant Neidel is the President. Under the Constitution and By-laws of the Union, the Secretary-Treasurer is the Union's chief executive officer.
*1103 Beginning a long time prior to the filing of this action, the Union had established a separate and segregated fund as its Political Fund to be used in connection with federal elections. This fund is derived exclusively from allocations from monthly dues of members who have signed a form designated "Political Fund Authorization." The Fund is under the direct control of the defendants and they intend to use it in federal elections. They also intend to add to the fund by means of the authorized allocations from the dues payments unless enjoined by this Court.
Some 9,129 members, approximately 2/3 rds of the total membership of the union, have signed such authorizations, mostly for a 30 cents a month allocation. The remainder have authorized a 20 cent allocation, these latter authorizations having been executed many years ago. The parties have stipulated that all the authorizations were signed voluntarily, without any coercion, threats, intimidation, promises of reward, or inducements of any kind, and that those members who fail to execute such authorizations do not lose their membership or their jobs.
The amount of the monthly dues of a member is no different whether or not he signs the authorization. With respect to those members who have not signed an authorization, the Union places their entire dues payments in its general treasury. With respect to the members who have executed authorizations, it is the policy and practice of the Union upon receipt of their monthly dues to deduct from each payment the amount allocated by the member and to place it in the Political Fund, the balance of the dues going into the general treasury. As of the time this suit was instituted, the Fund contained an amount in excess of $62,000.
The issue for resolution is a very narrow one. It involves the application and interpretation of Section 610, 18 U.S.C., as amended by Section 205 of the Federal Election Campaign Act of 1971. Section 610 makes it unlawful for any labor organization to make a political contribution or expenditure in connection with federal elections. This section was authoritatively construed in Pipefitters Local No. 562 v. United States, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11. In that case, the Supreme Court, l. c. 406, 92 S.Ct. l. c. 2274, held that "the prerequisite for a permissible political fund is simply that it is not financed by actual or effective dues or assessments." The contributions involved in Pipefitters were additional to the normal dues payments required of all members. The issue in that case was whether the political contributions came from funds voluntarily given to the Union for such purpose or whether the contributions to the fund were derived from effective dues or assessments.
Section 205 of the Federal Election Campaign Act, enacted while Pipefitters was pending in the Supreme Court, expressly authorizes "the establishment, administration and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a * * * labor organization." However, it expressly provides that it shall be unlawful for such fund to make a contribution or expenditure by utilizing money or anything of value secured by dues, fees or other monies as a condition of membership in a labor organization.
The agreed facts clearly show that a separate segregated fund was established and is administered by defendants on behalf of the Union. However, the facts also conclusively demonstrate that this fund is financed by money secured through union dues. No part of the fund is derived from money contributed, voluntarily or otherwise, additional to the members' fixed dues payments. The money, which is diverted from the Union's general treasury by means of the "allocations" authorized by the members, was theretofore assessed by the Union as part of its dues structure, the full amount of which is required to be paid as a condition of membership.
*1104 Under any view of the facts, the members who have voluntarily authorized part of their dues payment to go to the Political Fund are not thereby making voluntary contributions of their own funds, since the amount of their dues is fixed and payable to the Union in all events. Each member in the same wage scale must pay an identical amount as dues.
In effect, what defendants argue is that the amount of dues of those members who authorize allocations to the Political Fund is reduced by the amount of such allocation on condition that such amount be contributed to the Fund.[1] However, we find no provision in the Constitution or By-laws of the Union which authorizes the Union to set a different and lower rate of dues for those members who wish to make political contributions than for those who do not. We doubt that such a provision would be valid.
Although the allocations to the Political Fund are not required as a condition of membership, the payment of the dues from which the allocations are made is so required. Since the amount of the dues remains constant and the contribution or allocation is made from the dues money which the member is required to pay as a condition of membership in the Union, the authorization to allocate or expend a portion of the dues payment for political purposes amounts to no more than a direction to the Union to take a part of the dues the member is required to pay and use it for political purposes.
It is also important that to the extent a portion of the dues payments is allocated to the Political Fund the amount of such dues which can be expended for ordinary union purposes is decreased, with the result that a greater burden is placed on those members whose dues are used for non-political purposes. We need not develop this point, because it is clear to us that any expenditures out of the Fund for political purposes would constitute the utilization of money secured by dues required as a condition of membership in the Union. Such utilization of money is unlawful and violative of Section 610 as amended.
The foregoing memorandum constitutes our findings of fact and conclusions of law. Judgment will be entered in accordance herewith.
NOTES
[1] On defendants' theory a member could conceivably allocate the entire amount of his dues to the Political Fund thereby paying no dues at all.