**Bernard W. McNAMARA et al., Plaintiffs-Appellants,**

v.

**Robert JOHNSTON et al., Defendants-Appellees.**

No. 73–1829.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1974.

Decided Sept. 16, 1975.

---

William J. O'Brien, Chicago, Ill., John L. Kilcullen, Washington, D. C., for plaintiffs-appellants.

Stephen I. Schlossberg, Washington, D. C., M. Jay Whitman, Detroit, Mich., Irving M. Friedman, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and SPRECHER, Circuit Judge.

FAIRCHILD, Chief Judge.

The primary question before us is whether rank and file union members can bring an action, pursuant to the Labor Management Reporting and Disclosure Act (popularly referred to as the Landrum-Griffin Act) § 501, 29 U.S.C. § 501 (1975), against union officers for breach of fiduciary duty when the officers, in accordance with general resolutions and the union's constitution, authorize and contribute union funds to political candidates and social causes.

I.

Plaintiffs, rank and file members of Local 558 of the International United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), are employed as production unit workers in the Fisher Body Plant of General Motors Corporation at Willow Springs, Illinois. Defendants are (or were) officials of the UAW or its subordinate bodies: Robert Johnston, Regional Director of UAW Region 4, and Chairman UAW Illinois State Community Action (CAP) Council; James Wright, Chairman of

UAW Chicago Area CAP Council; Gerald Peterson, former Secretary-Treasurer of the Illinois CAP Council; Emil Mazey, International UAW Secretary-Treasurer; and Leonard Woodcock, International UAW President.

Plaintiffs, under a union shop agreement, pay monthly membership dues to UAW. The UAW constitution, as augmented by administrative instructions issued by the president of UAW International, requires that all local unions in Illinois, including Local 558, set aside a minimum of three percent of each member's monthly membership dues as a per capita payment to the UAW Illinois State Community Action Program (CAP). These CAP assessments are then spent to further activities and causes considered beneficial to union members and their families.[1]

On May 6, 1969, a majority of the members of Local 558 adopted a resolution objecting to the use of their dues money to support political and certain ideological causes and groups:

Resolution—the membership of UAW Local 558, party to a Union Shop, deny use of all or any part of their dues money in support of any political candidate, political organization, state or federal legislation, any organization or group engaged in violence or using the threat of violence, the illegal seizure or destruction of property, engaged in social disorder, promoting racial agitation, and any organization or group that preaches, promotes or identifies with Marxist or communist ideology. Furthermore, this membership does not authorize any person, organization or group to act as spokesman for UAW Local 558 on any political endorsement, legislative endorsement, social problem or movement of any kind unless or until the membership has clearly made such an endorsement by voting 68% in support by secret ballot using the dues check-off lists to verify voter's eligibility.

Formal notice of the resolution was given to the UAW officials.

Despite this resolution, the defendants, it is alleged, contributed CAP funds to social causes and political candidates in state and federal elections.[2] After re-

---

1. In 1968, the UAW 21st Constitutional Convention authorized the International's Executive Board to establish the Community Action Program. An Administrative Letter from UAW International President, Walter P. Reuther, to all local unions, dated May 19, 1969, explains that:

The object and purpose of the UAW Community Action Program (CAP) will be to develop, promote and implement policies and programs which will improve and enrich the quality of American life. In furtherance, thereof, the UAW Community Action Program will engage in community, civic, welfare, educational, environmental, cultural, citizenship-legislative, consumer protection, community services and other activities designed to improve the economic and social conditions of UAW members and their families and to promote the general welfare and democratic way of life for all people.

In addition, the UAW Community Action Program may cooperate and work with community groups in the common effort to make a better life for all people where the programs and objectives of such groups have the same basic objectives as the UAW. Appendix at 5.

See UAW Constitution, Art. 23, § 1. All UAW Local Unions must affiliate with CAP, UAW Constitution, Art. 37, § 4.

2. The complaint alleges that defendants, Johnston, Wright and Peterson, contributed CAP funds to Adlai Stevenson III, a candidate for United States Senate in 1970; various candidates for the United States House of Representatives in the 1970 Congressional elections; and various candidates for Illinois state office, including the Illinois General Assembly and Constitutional Convention in 1970. Defendants Mazey and Woodcock are specifically charged with contributing union funds to:

National Students Association (NSA)

Students for a Democratic Society (SDS)

Students Non-Violent Coordinating Committee (SNCC)

New Mobilization for Peace

Turn Toward Peace

Citizens Committee for a Nuclear Test Ban

National Committee for a Sane Nuclear Policy (SANE)

Americans for Democratic Action (ADA)

United World Federalists

Peace With Freedom Inc.

Dubois Memorial Committee

questing the executive officers of Local 558 to bring legal proceedings and receiving no satisfaction, plaintiffs brought this action asserting federal jurisdiction under § 501(b) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501(b).[3] Their complaint alleges that defendants breached the fiduciary duty imposed by § 501(a) of that Act, 29 U.S.C. § 501(a):

A. By failing to hold such money and property for the benefit of said labor organization and its members as required by Section 501(a) of the Labor Management Reporting and Disclosure Act (29 U.S.C., Section 501(a)).

B. By failing to manage, invest and expend said money and property in accordance with the constitution, bylaws and resolutions of said labor organization.

C. By ignoring said resolutions and dealing with the members of said labor organization as an adverse party, and by expending said moneys and property in a manner that conflicts with the interest of the members of said labor organization.

D. By paying and expending said money and property to and for candidates for Federal office in violation of the Federal Corrupt Practices Act, 18 U.S.C., Section 610.

The prayer for relief requests defendants to account for all monies received and expended in their capacity as union officials over the last five years; an injunction restraining defendants from contributing union monies to political and social causes; damages for all monies unlawfully diverted; and attorneys' fees and all other relief the court deems proper.

The UAW International moved to intervene, to provide counsel for defendants, and to dismiss the complaint. The district court granted the motion to in-

---

United States Committee for the UN
American Association for the UN
Confederate Spanish Societies
United States Committee for Democracy in Greece

**3.** The pertinent provisions of § 501 provide:

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

tervene, 55 F.R.D. 441 (N.D.Ill.1972), and dismissed the complaint for failure to state a claim, 360 F.Supp. 517 (N.D.Ill. 1973). This appeal followed. We affirm.

## II.

After we heard oral argument, Congress passed and the President signed into law the Federal Election Campaign Act Amendments of 1974, Pub.L. No. 93–443, 88 Stat. 1263 (Oct. 15, 1974), and the Supreme Court decided *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The parties have submitted supplemental briefs assessing the impact of this new law on this appeal, and we have concluded that the Campaign Act Amendments require the dismissal of plaintiff's complaint for lack of federal jurisdiction insofar as it requests that defendants be enjoined from contributing CAP funds to political campaigns for federal office under circumstances that allegedly violate the Federal Corrupt Practices Act, 18 U.S.C. § 610.[4]

The 1974 Campaign Act Amendments created a Federal Election Commission, § 310(a), 88 Stat. 1280, and established an administrative procedure to process complaints alleging violations of 18 U.S.C. § 610 after January 1, 1975. §§ 314, 410, 88 Stat. 1284, 1304. The Amendments expressly vest the Commission with "primary jurisdiction with respect to the civil enforcement of" 18

4. Section 610 provides:

It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, and any person who accepts or receives any contribution, in violation of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the violation was willful, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

For the purpose of this section "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

As used in this section, the phrase "contribution or expenditure" shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any service, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section; but shall not include communications by a corporation to its stockholders and their families or by a labor organization to its members and their families on any subject; nonpartisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and their families, or by a labor organization aimed at its members and their families; the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation or labor organization: *Provided,* That it shall be unlawful for such a fund to make a contribution or expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; or by dues, fees, or other monies required as a condition of membership in a labor organization or as a condition of employment, or by monies obtained in any commercial transaction.

U.S.C. § 610. § 310(b), 88 Stat. 1281. The legislative history of the measure confirms that henceforth the Commission is charged with the civil enforcement of § 610.[5]

In *Cort v. Ash, supra,* a shareholder brought a derivative suit seeking to imply a private cause of action for injunctive relief and damages to remedy alleged violations of 18 U.S.C. § 610 by corporate management in connection with the 1972 Presidential election. The action was filed prior to the 1974 Campaign Act Amendments, but the Court, invoking well established principles, nevertheless held that the Campaign Act Amendments "constitute an intervening law that relegates to the [Federal Election] Commission's recognizance respondent's complaint as a citizen or stockholder for injunctive relief against any alleged violation of § 610 in future elections." 95 S.Ct. at 2087. The Court then examined those factors that are considered when determining whether a private remedy is implicit in a statute not expressly providing one and held that there was no federal cause of action for damages on behalf of a corporation for the alleged violation of 18 U.S.C. § 610.

The first branch of *Cort* is dispositive of plaintiffs' claim for injunctive relief. We are aware that the instant case differs from *Cort* in that we are dealing with a labor organization, not a corporation, and that we are asked to construe a statute, 29 U.S.C. § 501, not to imply a cause of action, but we nevertheless reach the same result. Both the language and the legislative history of the Campaign Act Amendments indicate that Congress intended the statutory remedy before the Commission to govern all allegations of misconduct of this type in future federal elections. Accordingly, plaintiffs' complaint must be dismissed to the extent it requests injunctive relief for future violations of § 610.

## III.

Whether plaintiffs' complaint insofar as it seeks an accounting and damages for past CAP expenditures for partisan political activities and social causes and an injunction barring the expenditure of funds in the future for social causes and political activities not in violation of 18 U.S.C. § 610 states a cause of action under 29 U.S.C. § 501 is another matter.

■ UAW argues at the outset that plaintiffs have failed to comply with § 501(b)'s requirement that an unsuccessful demand must be made upon the union or its officers to seek relief against the defendants before suit may be commenced.[6] Plaintiffs made a demand upon the officers of Local 558 but not upon the officers of the UAW International. While we tend to agree with UAW that a demand should have been made on the International, on the facts of this case we do not believe this omission defeats our jurisdiction. We have recognized the similarity between a § 501 action and a shareholder's derivative suit and have noted that, as in the case of a derivative suit, a demand is not always necessary. *Hood v. Journeymen Barbers, Hairdressers, Etc.,* 454 F.2d

---

**5.** When presenting the Conference Report on S. 3044, the Campaign Act Amendments to the House, Representative Hays, Chairman of the House conferees stated:

In order to assure that civil suits are not misused in a partisan manner, and that the complex and sensitive rights and duties stated in the Act are administered expertly and uniformly, the Act provides that *all* civil complaints predicated upon or pertaining in any manner to Titles I and III of the Act or sections 608 through 617 of Title 18 United States Code shall be channeled to the [Federal election] Commission. . . . The delicately balanced scheme of procedures and remedies set out in the Act is intended to be the *exclusive* means for vindicating rights and declaring the duties stated therein. (Emphasis supplied.) 120 Cong.Rec., H10330 (daily ed. Oct. 10, 1974). See *Id.,* H10328 (remarks of Rep. Brademas); 120 Cong.Rec., S18525 (daily ed. Oct. 8, 1974) (remarks of Sen. Cannon); S.Conf.Rep. No. 93–1237, 93rd Cong., 2d Sess., 3 U.S.Code Congressional and Administrative News 5661–62 (1974).

**6.** See note 3, *supra.*

1347, 1354, n. 23 (7th Cir. 1972). Here, the UAW has consistently and vigorously argued that defendants were acting at all times in compliance with the union's constitution and duly adopted resolutions, and it is apparent that a demand upon the International for relief would have been futile. Under these circumstances, plaintiffs' failure to make such a request is excused. Cf. *Nussbacher v. Continental Illinois National Bank,* 518 F.2d 873 (7th Cir., 1975).

 Stripped of its essentials, plaintiffs' position on the merits is that union officers have a fiduciary duty under § 501 to hold and spend union funds for the union members' benefit and that where members object to a particular expenditure and that expenditure is made, the officers, at least as to the objecting members, breach that duty. The UAW, in response, contends that Congress looked to the union's constitution, bylaws, and resolutions to define a union officer's fiduciary responsibilities and that so long as an officer expends funds without personal gain in compliance with these standards, there is no breach of any duty imposed by § 501. We accept the union's construction of the statute as the correct statement of the law and reject plaintiffs' claim. See *Hood v. Journeymen Barbers, Hairdressers, Etc., supra,* at 1355.

Section 501's language and the legislative history of the Landrum-Griffin Act make it clear that Congress placed primary reliance on union rules and policies to establish the scope of a union representative's fiduciary obligations. The statute itself specifies that union officers act as fiduciaries not for each member but for the labor organization "as a group" and then charges that union officers must expend union money and property "in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder. . . . ."

Landrum-Griffin was in part a response to the disclosure of official pilfering, union violence and the use of union office for personal profit during hearings held by the Select Committee on Improper Activities in the Labor or Management Field chaired by Senator McClellan. S.Rep. No. 187, 86th Cong., 1st Sess., 2 U.S.Code Congressional and Administrative News 2318 (1959). To expose conflicts of interest and stamp out embezzlement and self-dealing by union officials, the Act required unions to comply with certain reporting and disclosure requirements, established new crimes, and codified the fiduciary obligations of union representatives. See Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819 (1960).

Senator McClellan, a principal congressional advocate of the fiduciary duties of union officials, argued during the Senate debates that union officials should only spend union funds for legitimate union purposes, and he equated these purposes with those "purposes which were proper under the [union's] constitution." 105 Cong.Rec. 6525 (1959) (Office of the Solicitor, U.S. Dep't. of Labor, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, 1021 (1964), [hereinafter cited as Legislative History]). Senator Kennedy's remarks evince a like intent:

> Union officers will not be guilty of breach of trust under this section [§ 501] when their expenditures are within the authority conferred upon them either by the constitution and bylaws, or by a resolution of the executive board, convention or other appropriate body—including a general meeting of the members—not in conflict with the constitution and bylaws. 105 Cong.Rec. 17900 (1959) (Legislative History at 1075).

The House sponsors of section 501 entertained a similar view of a union officer's fiduciary obligations. H.R.Rep. No. 741, 86th Cong., 1st Sess., 81–82 (1959). 2 U.S.Code Congressional and Administrative News 2479–80 (1959). See *Cox, supra,* at 829. See also, 105 Cong.Rec. 15690 (1959) (remarks of Rep. O'Hara) (Legislative History at 1065).

In the present case, the UAW constitution (1970) contains ample authorization for the expenditures plaintiffs allege to be violations of § 501. Article 2 sets forth some of the objectives of the UAW:

". . . to vote and work for the election of candidates and the passage of improved legislation in the interests of all labor." (Art. 2, § 4)

"To engage in legislative, political, educational, civic, welfare and other activities which further, directly or indirectly, the joint interests of the membership of this organization in the improvement of general economic and social conditions in the United States of America, Canada, and generally in nations of the world." (Art. 2, § 5)

Article 23 establishes the objectives of the UAW's Community Action Program:

"The UAW Community Action Program [CAP] shall engage in community, civic, welfare, educational, environmental, cultural, citizenship-legislative, consumer protection, community services and other activities to improve the economic and social conditions of UAW members and their families. . . ." (Art. 23, § 1)

Other provisions authorize the expenditure of union funds to achieve the purposes set forth in the constitution. (Art. 2, § 6(a); Art. 7, § 2).

Additional support for the expenditure of CAP funds for political and social causes is found in the Proceedings of the UAW's Twenty-Second Constitutional Convention in 1970. At the convention, rank and file union representatives approved numerous resolutions authorizing the development of programs to promote civil rights, consumer, educational, and environmental causes as well as organizations advocating economic and social policies favorable to the union.[7]

Plaintiffs contend, however, that these general constitutional provisions and convention resolutions can provide no basis for the expenditures challenged here. They argue first that each expenditure must be specifically authorized by the union membership. But such a requirement would surely impose an impossible burden on the union. No widespread large institution, whether private association or public body, can function if each executive expenditure requires constituent approval.

Plaintiffs' alternative argument that the constitutional provisions and convention resolutions are general exculpatory clauses that are void under 29 U.S.C. § 501(a) must also fail. Section 501 was intended to follow "the well-established distinction between conferring authority upon an agent or trustee, which is permissible and protects him against liability, and attempting to excuse breaches of trust, which is here made void as against public policy." H.R.Rep. No. 741, 86th Cong., 1st Sess., 81–82, U.S.Code Congressional and Administrative News, 2480 (1959). Without doubt, the provisions and resolutions upon which the UAW relies fall within the former category of measures that confer authority.

More troublesome is plaintiffs' contention that the authorizations found in the UAW constitution and convention proceedings are void as against public policy inasmuch as they authorize violations of the Corrupt Practices Act, 18 U.S.C. § 610. As noted above, the Supreme Court in *Cort v. Ash* declined to imply a federal civil remedy for damages in a

---

**7.** The Convention approved the UAW's Program Recommendations for CAP Councils which advocated the endorsement of political candidates, the establishment of educational programs, participation in community services, and cooperation with environmental and consumer groups. Proceedings of the UAW's Twenty-Second Constitutional Convention 68–70 (1970). Other resolutions, for example, urged CAP support for health care and welfare reform, *Id.* at 64; candidates representing labor's views in state and national elections, *Id.* at 108; Union contact with young American workers and students, *Id.* at 124; and measures to eliminate sex discrimination, *Id.* at 278–79.

shareholder's derivative suit on behalf of a corporation for violation of § 610. In a footnote, however, the Court left open the question of whether a stronger federal interest in labor organizations may warrant a different result in a case where a union member brought a private action for a violation of § 610 against the union's leadership. 95 S.Ct. at 2089, n. 13. Mindful of this disclaimer, we have carefully considered whether plaintiffs' allegation that defendants expended CAP funds in violation of § 610 is properly asserted in and is sufficient to sustain this § 501 action.

Since we are asked to construe a statute, and not to imply a civil remedy for the violation of a criminal statute, the legislative history of § 501 should be accorded substantial, if not controlling, weight.[8] That history quite explicitly indicates that Congress did not intend § 501 to hamper authorized union financial contributions to community and political organizations.[9] Senator McClellan, for example, assured Senator Kennedy that the proposed legislation would not interfere with COPE, the AFL–CIO's political organization:

> If the Senator has any thought that I am trying to interfere with COPE, that is not correct. There may be amendments to that point, and to deal with that direct question. However, I

am not offering my amendment on the direct question of political contributions. Everyone knows my views on that subject, I assume. This is not a drive at that situation. It is a drive at the skulduggery of some leaders when they meet in executive sessions and pay off this one and pay off that one. 105 Cong.Rec. 6526 (1959) (Legislative History at 1023).

Senator Morse echoed this view when he stated that: "I have been assured that the fiduciary section will not prevent political contributions. I trust the courts will so interpret the language in the bill." 105 Cong.Rec. 17872 (1959) (Legislative History at 1071).

■ We have previously recognized that Congress drew upon the Restatement of Agency when it codified the common law of fiduciary obligations in § 501. *Hood v. Journeymen Barbers, Hairdressers, Etc., supra,* 454 F.2d at 1355. Under that authority it is well established that an agent cannot be insulated from criminal liability by the fact that his principal authorized his conduct. But it is equally clear, and fundamental fairness requires, that as between agent and principal, an agent cannot be held liable for the use of the principal's property in an unlawful manner when it is reasonable to infer that the principal authorized the agent's conduct.[10] Compare

---

8. Plaintiffs do not claim an implied cause of action. According to their brief, their "action here is founded on an express statutory grant of jurisdiction under 29 U.S.C. § 501 . . . and was not premised upon the theory of an implied cause of action under 18 U.S.C. § 610."

9. Congress in § 501 did not intend to regulate or limit the purposes for which a union may spend its money as long as expenditures were authorized by the union in some manner. Smith, The Labor Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 165, 228 (1960); *Cox, supra,* at 828–29. Congress was fully aware that the interests of labor organizations are not confined to the terms and conditions of employment but rather extend to a broad range of social and economic issues as they effect their members off, as well as on, the job. *See generally* 105 Cong.Rec. 17900 (1959) (remarks of Sen. Kennedy) (Legislative History at 1075); 105 Cong.Rec. 14988 (1959)

(remarks of Sen. Morse) (Legislative History at 1058).

10. For this reason, *United States v. Boyle,* 157 U.S.App.D.C. 166, 482 F.2d 755 (1973), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 and *Anderson v. Vestal,* 79 LRRM 2755 (M.D.Tenn.1971) do not aid plaintiffs. *Boyle* was a criminal prosecution brought under 18 U.S.C. § 610 and 29 U.S.C. § 501(c), and evidence that the union authorized the defendant's violation of the law was irrelevant. In the instant case where the plaintiffs purport to represent the union membership in a civil action for breach of fiduciary duty such a showing is a complete defense. While *Anderson* was a civil case brought on behalf of the union under § 501 and the union officers were charged with spending union funds in violation of § 610, there was no showing there, unlike the present case, that the expenditures were authorized by some union resolution or policy.

Restatement (Second) of Agency § 359A with *Id.* § 19 comment *a,* § 34 comment *g,* § 411 comment *e,* and § 412(2). It follows then that despite the alleged illegality of certain CAP expenditures, so long as the expenditures were authorized in some fashion, plaintiffs can have no cause of action on behalf of the union for breach of fiduciary duty.

We also deem it significant that the UAW has a rebate procedure whereby union members who object to CAP expenditures can recover a pro rata share of that part of their dues allocated to the CAP program.[11] Thus it cannot be said that the UAW leadership can arbitrarily spend CAP funds on political causes they alone favor at the expense of the views of the individual members. By the same token, union members such as plaintiffs who do not avail themselves

of this rebate procedure appear at least tacitly to consent to CAP expenditures and to be in no position to claim a breach of trust.

Finally, on the particular facts of this case it is unnecessary to recognize a cause of action for the alleged violation of § 610 to effectuate the purposes of the Corrupt Practices Act. Congress extended the Corrupt Practices Act to cover labor unions to minimize the influence of unions in federal elections and to prevent the use of union funds for political causes an individual member or a minority of the union might oppose.[12] *United States v. CIO,* 335 U.S. 106, 115, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); *Pipefitters v. United States,* 407 U.S. 385, 402–09, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). But allowing plaintiffs to proceed and possibly recover damages will not cure the impact of the alleged unlawful union

---

11. Art. 16, § 7 of the Constitution of the International Union, UAW (1970) provides:

*Section* 7. (a) Any member shall have the right to object to the expenditure of a portion of his dues money for activities or causes primarily political in nature. The approximate proportion of dues spent for such political purposes shall be determined by a committee of the International Executive Board, which shall be appointed by the President, subject to the approval of said Board. The member may perfect his objection by individually notifying the International Secretary-Treasurer of his objection by registered or certified mail; provided, however, that such objection shall be timely only during the first fourteen (14) days of Union membership and during the fourteen (14) days following each anniversary of Union membership. An objection may be continued from year-to-year by individual notifications given during each annual fourteen (14) day period.

(b) If an objecting member is dissatisfied with the approximate proportional allocation made by the committee of the International Executive Board, or the disposition of his objection by the International Secretary-Treasurer, he may appeal directly to the full International Executive Board and the decision of the International Executive Board shall be appealable to the Public Review Board or the Convention *Appeals Committee* at the option of said member.

This provision was apparently adopted in response to the Supreme Court's decisions in *International Assoc. of Machinists v. Street,*

367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) and *Railway Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963). See *Reid v. District Lodge No. 1093, UAW,* 479 F.2d 517, 520 (10th Cir. 1970), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 592, 38 L.Ed.2d 483. Compare *Pipefitters v. United States,* 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972) with *United States v. CIO,* 335 U.S. 106, 149, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948) (Rutledge, J., *concurring*).

12. Labor organizations were first included within the coverage of the Corrupt Practices Act by the War Labor Disputes Act of 1943, 57 Stat. 167. The Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act, later made this expansion of the scope of § 610 permanent. The parties have not directed us to and we have independently been unable to discover any indication in the legislative history of § 610 that Congress intended to authorize a private cause of action for union members to police the use of union funds for political purposes. See S.Rep. No. 101, 79th Cong., 1st Sess. (1945). The relevant portions of the Taft-Hartley legislative history can be found in Subcomm. on Labor of Senate Comm. on Labor and Public Welfare, 93rd Cong., 2d Sess., Legislative History of the Labor Management Relations Act, 1947 (Comm. Print 1974). A single district court has recognized a private civil action for violation of § 610, apparently without consideration of the implied remedy problem. *Barber v. Gibbons,* 367 F.Supp. 1102 (E.D.Mo.1973).

contributions "upon an election already past." *Cort v. Ash, supra,* 95 S.Ct. at 2091. And, as for the protection of minority interests, the UAW rebate procedure appears to provide an adequate remedy.

18 U.S.C. § 610 prohibits contributions or expenditures by corporations or labor organizations in an election at which federal officers are elected or nominated. This limitation suggests that Congress was focusing on the regulation of elections within its power as elections rather than on regulation of unions. The fact that § 610 appears not to be designed as a regulation of union affairs makes it less reasonable and natural to interpret § 501 to include a right of action for funds spent within the authorization of expenditures of the union, but in violation of § 610.

Under these circumstances, we see no reason to deviate from Congress' apparent intention that § 501 not be used as a means for dissident union members to challenge authorized expenditures.

### IV.

Plaintiffs also assert that the district court erred in allowing UAW's motion to intervene. However meritorious this claim may have been at the time of the district court's decision, our resolution of merits of plaintiffs' complaint renders the point academic. We only note that in view of the union and union officials charged as defendants in a § 501 suit, it is a rare case in which intervention should be allowed. See *International Brotherhood of Teamsters v. Hoffa,* 242 F.Supp. 246 (D.D.C.1965); *Highway Truck Drivers Local 107 v. Cohen,* 182 F.Supp. 608, 620 (E.D.Pa.), *aff'd,* 284 F.2d 162 (3rd Cir. 1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). For similar reasons, union officials charged as defendants in suits of this nature should retain independent counsel and bear the financial burden of their defense. Then, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense. See *Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir. 1962), *aff'g,* 204 F. Supp. 890, 895 (S.D.N.Y.).

Accordingly, the judgment appealed from is affirmed.