**Henry P. CARR**

v.

**Israel LEARNER et al.**

**Civ. A. No. 75–1424–T.**

United States District Court, D. Massachusetts.

March 25, 1976.

William B. Jerome, Somerville, Mass., for plaintiff.

James T. Grady, Grady & McDonald, Boston, Mass., for William J. McCarthy.

Segal, Roitman & Coleman, George B. Washington, Harold B. Roitman, Boston, Mass., for Walsh, Smith and Learner.

Dickstein, Shapiro & Morin, Charles H. Morin, Boston, Mass., for Frank E. Fitzsimmons.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, a member of Local 259, Newspaper Chauffeurs, Distributors, and Helpers (Local 259), affiliated with the International Brotherhood of Teamsters (I.B.T.), brings this action seeking monetary and injunctive relief against certain past and present officers of Local 259 and the I.B.T. Briefly, the plaintiff alleges that the defendants have not bargained in good faith with plaintiff's employer to acquire for plaintiff the benefits of a retirement plan with benefits superior to those offered by his current plan. The sole basis for jurisdiction is 29 U.S.C. § 501, which states that union officers have fiduciary obligations towards union members in the handling of union funds, assets and property. Defendants have moved to dismiss on the ground that § 501 does not grant jurisdiction over a claim of this kind and, therefore, that this court lacks subject matter jurisdiction. For reasons elaborated below, this court agrees with defendants and grants their motion to dismiss.

I

In granting defendants' motion, the court must take the facts of the case as plaintiff has presented them in his complaint. The plaintiff is employed by the Hearst Corporation, a newspaper publisher. Local 259 is the collective bargaining agent for plaintiff and some six hundred other members of the Local working for various employers. Local 259 is affiliated with Joint Council of Teamsters No. 10, located in Boston, Massachusetts; with the Eastern Conference of Teamsters located in Bethesda, Maryland; and with the I.B.T. internationally, which has a principal place of business in Washington, D. C.

The officers of the I.B.T. have and have had the power to take various kinds of administrative action against officers of locals who violate fiduciary obligations towards their members.

The local has been the bargaining agent for plaintiff and others for many years and, at the time the complaint was filed, the most recent contract was in effect from January 1, 1972 through December 31, 1974.[1]

Local 259's most recent contract and past contracts have included a provision for a retirement pension fund, called the Boston Newspaper Retirement Fund (the Newspaper Fund), which was effective from January 1, 1954.

A large number of New England locals, however, are members of another retirement pension fund, termed the New England Teamsters and Trucking Industry Pension Fund (the Trucking Fund). The Trucking Fund has been in existence since 1958 and is governed by a Board of Trustees of whom one is defendant William J. McCarthy, a Vice President of the I.B.T. and President of Joint Council No. 10. The benefits available under the Trucking Fund are gener-

---

1. The complaint was actually filed on April 14, 1975.

ally superior to those available under plaintiff's present plan, the Newspaper Fund.

Employees of Teamster organizations, including the defendants, participate in a third retirement plan called the Teamster Affiliates Pension Plan (the Teamster Plan). This plan has benefits generally superior to both the Newspaper Fund and the Trucking Fund. The Teamster Plan is supported by contributions from the locals, including Local 259.

Since the establishment of the Trucking Fund in 1958 many members of Local 259, including the plaintiff, have attempted to get Local 259 into the Trucking Fund. In 1964 a petition signed by about 380 members of the Local requested that the Local join the Trucking Fund, and in 1972 a meeting of Local 259 passed a unanimous resolution seeking to join the Trucking Fund. Also in 1972 a petition signed by 280 members of the Local requested a special meeting of Local 259 on the subject of the Trucking Fund.

The plaintiff alleges that defendant officers of Local 259 have failed to bargain in good faith with plaintiff's employer and with the employers of other members of the Local in order to gain membership in the Trucking Fund for the members of Local 259. Defendants Francis L. Walsh and Samuel Smith have refused to call a special meeting to take action to join the Trucking Fund. The defendant officers of the I.B.T. have been contacted many times by the plaintiff and have failed to take action against the officers of the Local for failure to respond to the attempts of plaintiff and others to get Local 259 into the Trucking Fund.

On April 14, 1975 the instant complaint was filed and on May 19, 1975

plaintiff's application for leave to bring this action was allowed by the court in accordance with 29 U.S.C. § 501(b).

## II

29 U.S.C. § 501(a) states:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(b) goes on to grant U.S. district courts and state courts jurisdiction over suits involving violations of § 501(a), and to detail the procedure to be used in bringing these actions.[2]

2. § 501(b) states:
  When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appro-

priate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate re-

Defendants contend that the activities complained of, even if true, would not constitute the kind of breach of fiduciary obligation forbidden by § 501(a).[3]

A leading case interpreting § 501 is *Gurton v. Arons*, 339 F.2d 371 (2d Cir. 1964). In that case, the national executive board of the American Federation of Musicians had voided certain resolutions passed by a union local as violating the principles of the Federation. Plaintiffs from the Local complained of the executive board's action in a district court, claiming jurisdiction under § 501. Their case was dismissed for lack of subject matter jurisdiction. In affirming this holding the Court of Appeals said:

> It is equally clear that Section 501 of the [Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 *et. seq.*] has no application to the present controversy. A simple reading of that section shows that it applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them.

*Id.* at 375. (Footnote omitted).

As the Court of Appeals noted, the lower court decision in the *Gurton* case, *sub. nom. Guarnaccia v. Kenin*, 234 F.Supp. 429 (S.D.N.Y.1964), provided a comprehensive review of legislative history, articles and case law demonstrating that § 501 was intended to apply only to union officers' abuse of power in relation to union money and property.

Like the *Gurton* case, the instant case involves no allegation of bad faith by union officers in their handling of union money or property. The essence of plaintiff's complaint is an attack on the defendants' negotiating stance *vis a vis* the employers on the pension issue. To assert grievances about this stance under the jurisdictional umbrella of § 501 is to accomplish exactly what the *Gurton* court warned against—to turn § 501 into a catch-all provision by which any and all grievances against union officials can be aired. Section 501 simply does not give this court plenary power to look over the shoulders of union negotiators and review all their bargaining decisions.

The detailed review of § 501 set out in the recent case of *McNamara v. Johnston*, 522 F.2d 1157 (7th Cir. 1975) supports this court's position. There, individual union members brought suit under § 501 claiming that the expenditure of union funds by union officials for certain political and social causes, though sanctioned by the union's constitution, violated the officers' fiduciary obligations to union members. The court said:

> Stripped of its essentials, plaintiffs' position on the merits is that union officers have a fiduciary duty under § 501 to hold and spend union funds for the union members' benefit and that where members object to a particular expenditure and that expenditure is made, the officers, at least as to the objecting members, breach that duty. The [United Auto Workers], in response, contends that Congress looked to the union's constitution, by-laws, and resolutions to define a union

---

lief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

**3.** Defendants assert as other grounds for dismissal that plaintiff has brought this action for the benefit of himself only, and not for the union as required by § 501(b); that he has failed to join the employers of members of Local 259, who are indispensable parties; and that he has failed to request that union officers act to recover the union's property, as required by § 501(b). Because this court finds that the allegations raised here are not within the purview of § 501, it is unnecessary to reach these other defenses.

officer's fiduciary responsibilities and that so long as an officer expends funds without personal gain in compliance with these standards, there is no breach of any duty imposed by § 501. We accept the union's construction of the statute as the correct statement of the law and reject plaintiffs' claim. See *Hood v. Journeyman Barbers, Hairdressers, Etc.* [454 F.2d 1347 (7th Cir. 1972)], at 1355.

*Id.* at 1163.

As the Court of Appeals in *McNamara* pointed out, the Labor-Management Reporting and Disclosure Act was an attempt to bring an end to "official pilfering, union violence and the use of union office for personal profit . . . ." *Id.*

The only allegation made by plaintiff remotely resembling a charge of "use of union office for personal profit" is his contention that, somehow, the membership of the union officials in the Teamster Plan creates a conflict of interest between them and members of Local 259 on the issue of pension plans. Significantly, however, plaintiff does not allege that any benefits due the officials through the Teamster Plan would be affected by the conversion of Local 259 from the Newspaper Fund to the Trucking Fund. The most that could be said is that the membership of the union officers in the Teamster Plan deprives them of a personal stake in the pension plan of Local 259. This problem, if it is a problem, hardly constitutes a breach of fiduciary obligation, let alone "pilfering, union violence and the use of union office for personal profit." Indeed, the membership of the union officers in a neutral plan may insure their objectivity in assessing the relative merits of other pension plans.

Being outside the purview of § 501, plaintiff's substantive claims are the exclusive domain of the National Labor Relations Board (N.L.R.B.). As the court has noted, the crux of plaintiff's claim is that the union officials have shown bad faith in their negotiations with employers over Local 259's pension plan. This allegation, if true, would constitute a violation of § 8(d) of the Labor-Management Relations Act (L.M.R.A.), 29 U.S.C. § 158(d).

In sum, then, this court concludes that it lacks jurisdiction under 29 U.S.C. § 501 to entertain the allegations made by plaintiff. No other ground for jurisdiction having been asserted, the defendants' motions to dismiss will be granted. An order will issue.