**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dennis H. VANDENBERGEN,**
**Defendant–Appellant.**

**No. 91–1605.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1992.

Decided July 20, 1992.

Rehearing Denied Sept. 2, 1992.

Steven M. Biskupic, Asst. U.S. Atty. (argued), Milwaukee, Wis., for U.S.

Thomas E. Brown, Marna M. Tess–Mattner (argued), Gimbel, Reilly, Guerin & Brown, Milwaukee, Wis., for Dennis H. Vandenbergen.

David L. Uelmen, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for WI State AFL–CIO, amicus curiae.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dorothy Johnson, Mayor of Appleton, Wisconsin, finished second in the multi-party primary election in 1988. Jack Voight, who finished first and was her opponent in the general election, soon led the city council in rejecting contracts between the City and some of its unionized workers. Labor favored Johnson but could not add to her war chest, for Wisconsin limits giving by unions. Wis.Stat. § 11.-38(1)(a). Dennis Vandenbergen, secretary-treasurer of Teamsters Local 563, who joined the Mayor's reelection committee, hatched a scheme to evade the state's law. The seven members of the union's executive board voted themselves bonuses of

$300 apiece. All donated this money to Johnson's campaign. To ensure that there was no diversion, Vandenbergen instructed the union's secretary not to release any board member's bonus check until she received a check for $300 made out to Johnson's campaign fund. Vandenbergen collected and delivered these to Johnson personally. She was reelected.

█ Wisconsin could have prosecuted Vandenbergen and the other members of the board. Wis.Stat. § 11.61. Instead the United States indicted Vandenbergen under 29 U.S.C. § 501(c), which provides:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

The indictment charged Vandenbergen with "converting" the union's money. At trial Vandenbergen and the other members of the board testified that the bonuses were for extra work and had nothing to do with Johnson's campaign. It was mere coincidence, they asserted, that seven union officials, five of whom had never before made political contributions exceeding $100, simultaneously gave $300 apiece to a single candidate. The jury was unmoved and convicted; the judge concluded that Vandenbergen's testimony was shot through with lies, amounting to obstruction of justice. The sentence: six months' imprisonment, followed by another six months in a halfway house and a year of supervised release, plus a fine of $5,000 and restitution of $2,100. The conviction also disqualifies Vandenbergen from holding union office for five years.

Local 563 could have paid each board member an extra $300 for extra work, or just because it thought compensation for ordinary work deficient. The executive board so voted. Because neither the by-laws nor the constitution of the union is in the record, we must assume that authorization by the board alone was sufficient. According to the prosecutor, these payments are a federal crime because funneling cash to candidates for local office is illegal under state law and the board disguised the purpose of the disbursements. Yet § 501(c) is not written as a piggyback statute, turning state offenses into federal felonies. (The maximum sentence for a violation of Wis.Stat. § 11.38 is three years, two years less than the maximum under § 501(c).) Although the cock-and-bull story about extra work, coupled with Vandenbergen's conceded knowledge of Wisconsin's ban on contributions by unions, may show that he acted "willfully", it does not show that the scheme "converted" the union's money.

The prosecutor argues that all knowingly illegal uses of union money violate § 501(c). That may be the law in one circuit, see *United States v. Boyle*, 482 F.2d 755, 764–66 (D.C.Cir.1973), but it is not the law in ours, for we have expressly rejected *Boyle*'s holding. *United States v. Floyd*, 882 F.2d 235, 239–41 (7th Cir.1989). It is essential to distinguish the mental element of § 501(c) from the forbidden acts—embezzlement, theft, and conversion. This list does not include all violations of other laws but only the three named sins, which collectively denote acts that enrich the officers (or their friends) at the expense of the union. "[T]he common thread is that the defendant ... has taken another person's property or caused it to be taken, knowing that the other person would not have wanted that to be done." *United States v. Silverman*, 430 F.2d 106, 126–27 (2d Cir. 1970) (Friendly, J.).

This record does not support a conclusion that Vandenbergen and friends feathered their own nests to the detriment of the union. To the contrary, it shows that the executive board did what it thought necessary to promote the reelection of a mayor considerably more sympathetic to labor's interests than was her opponent. Once the city council rejected the contracts, the union was entitled to arbitrate. Vandenbergen estimated (without contradiction) that arbitration would have cost the union at

least $24,000—and it might have lost. With Johnson as Mayor, the union achieved its ends without that cost, and there would be other contracts to negotiate during her term. The union and its members were better off. They "would have wanted that to be done"—the benefit to unions of making political contributions is precisely why Wisconsin made them unlawful. The state was not trying to protect labor from *wasteful* expenditures!

■ Is every application of funds in violation of state law "conversion"? When choosing the language "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use" Congress named private wrongs. Conversion is an unauthorized assumption of the incidents of ownership; authority comes from the owner, not from the state. See *United States v. Stockton*, 788 F.2d 210, 216–17 (4th Cir. 1986). The distinction between theft and salary is permission: a manager who draws a $10,000 check as his salary does not embezzle, steal, or convert funds, although an unauthorized check in the same amount is theft. If the manager neglects a rule of securities law obliging him to disclose to investors the full amount of his stipend, that failure would not make the cashing of the check "theft" or "conversion," although the United States could prosecute for securities fraud. So too with labor: an *authorized* diversion of funds to an illegal end violates the substantive law restricting that outlay, but it does not annul the authorization and so add "conversion" to the list of offenses.

■ We can imagine cases in which formally authorized expenditures violate § 501(c). *United States v. Welch*, 728 F.2d 1113 (8th Cir.1984), is a good example. Union officers with power to approve expenditures poured its treasury directly into their pockets. The court concluded that expenditures conferring no possible benefit on the union's members, coupled with fraudulent intent, violated the statute. An expenditure that injures the members of the union, who have a power to disapprove outlays even though officers run the local day-to-day, fits within customary ideas of conver-

sion. *Welch* is consistent with our understanding that § 501(c) protects the members from the officers, and not the public from the union. *United States v. Thordarson*, 646 F.2d 1323, 1334–37 (9th Cir.1981), cannot be reconciled with this approach, for it holds that an authorized expenditure for the purpose of damaging the employer's property violates § 501(c). Although *Thordarson*, like our later opinion in *Floyd*, rejects the approach of *Boyle* under which all expenditures violating a substantive norm also violate § 501(c), it ends up in much the same place as *Boyle*, and we disapprove its holding for the same reason we rejected *Boyle*'s.

One could say that a state law in the form "no union shall . . ." prevents it from acting, rendering any improper outlay "unauthorized" as well. This is a variation on the theme that state law is part of every contractual relation, so that the powers of Local 563's executive board are as fettered by rules of law as they are by *Robert's Rules of Order*. Taken to its limits, this approach crushes all distinction between public and private assent. *General Motors Corp. v. Romein*, —— U.S. ——, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992), among many other cases, shows that incorporation of public law into private contract is not taken to its limit; the Court held that state rules for workers' compensation are not part of the contract between a firm and its workers. Neither the text nor anything we could find in the history of § 501(c) shows that it was designed as a multiplier for other statutes, creating second punishments for all expenditures that violate substantive restrictions. Cf. *McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir. 1975) ("so long as an officer expends funds [for political purposes] without personal gain in compliance with [the union's] standards, there is no breach of any duty imposed by § 501."). Criminal statutes should be read narrowly, so that they give clear notice of what they forbid. Stretching § 501(c) to create a federal penalty for all expenditures that violate state law would extend it far beyond the private-law connotations of "conversion." There is no federal interest in enforcing Wisconsin's

rules about campaign contributions—no reason why Vandenbergen's acts would be a federal crime in Wisconsin but not in another state that permitted unions to make direct donations instead of requiring them, as Wisconsin does, to donate through political action committees.

Vandenbergen violated Wisconsin's law if, as the jury concluded, the bonuses for "extra work" were disguised political contributions. He violated federal law if, as the district judge concluded, he committed perjury at his trial. But he did not violate 29 U.S.C. § 501(c). Wisconsin may treat a union's political contribution as an offense without initiating a bootstrap by which the same acts become a federal felony.

REVERSED