Arthur L. HOLDEMAN, on behalf of Local 88 of the International Organization of Masters, Mates and Pilots of America, AFL-CIO, Plaintiff,

v.

Lloyd W. SHELDON and Frank T. Scavo, Defendants.

United States District Court
S. D. New York.
May 9, 1962.

Burton H. Hall, New York City, for plaintiff.

Harold, Luca, Persky & Mozer, New York City, for defendants. (John R. Harold, New York City, of counsel.)

CROAKE, District Judge.

This is an action instituted by Arthur L. Holdeman, president of Local 88 of the International Organization of Masters, Mates and Pilots of America (hereinafter referred to as "Local 88"), on behalf of the union against defendants Lloyd Sheldon and Frank T. Scavo, officers of Local 88, pursuant to 29 U.S.C.A. § 501(b), for certain alleged unlawful acts of the defendants, as officers of the union. The claims against these defendants arise out of the issuance of certain checks expending the funds of the union by these defendants.

The plaintiff now moves for a temporary injunction restraining defendants, Sheldon and Scavo, and other persons in participation with them from allowing Local 88 to defend or otherwise represent the two individual defendants in this suit.

Local 88 moves to intervene in this action and additionally requests that the time of individual defendants Sheldon and Scavo to answer the complaint be extended so that if the motion to intervene is granted, a common answer may be served on behalf of the individual defendants and Local 88. The individual defendants and Local 88 also cross-move, in response to original motion of the plaintiff for injunctive relief, and for an order dismissing the complaint for failure to state a claim upon which relief may be granted, also for summary judgment or alternatively for an order referring this matter to Judge Cooper of this court.

This dispute involves the payment of union funds to two persons who may or may not be employees of the union. Although the parties are in dispute as to the factual circumstances involved, certain facts appear to be uncontroverted. On or about the beginning of August 1961, two patrolmen named Gaier and Fowler, employed by the union, were discharged from their positions by action of the executive board. The discharge was to become effective on August 11, 1961. Two other men were appointed to the positions from which these men had been discharged. Prior to the effective date of the discharge, a meeting of the members of the union was held at which the action of the executive board was rejected.

At this point, the status of the discharged and newly appointed patrolmen became doubtful due to the conflict between the action taken by the executive committee and that taken by the members at their meeting. Since the union had recently adopted a new constitution, it was not clear whether the right to discharge and hire union employees was vested in the executive board or in the general membership. To clarify the existing situation, defendant Sheldon instituted an action in the Supreme Court, Queens County, to restrain the newly-hired patrolmen from performing their duties. An *ex parte* restraining order was issued until September 1, 1961, enjoining the new patrolmen from assuming their positions, until the legal issues concerning the conflict of authority were determined by that court. The court, in an opinion dated September 1, 1961, held that under the new constitution adopted by the union, the office of patrolman was made an elective office. The court further found that "Section 6" of the new constitution provided that the provision of the new constitution relating to the election processes and the positions of officers shall apply to the terms of offices commencing January 1, 1962. The court, therefore, concluded that the election of patrolmen prior to January 1, 1962 was governed by the provisions of the old constitution which vested final authority for designating patrolmen in the executive board.

During the intervening period, defendants Scavo and Sheldon signed checks which were used to pay patrolmen Gaier and Fowler for work allegedly performed by them for the weeks ending August 18, August 25 and September 1. It is to recover these payments that this suit is brought. Plaintiff contends that the two patrolmen did not work during this period and, further, that defendants Sheldon and Scavo were not authorized to sign checks for such payments. Defendants maintain that the patrolmen did work during that period and were, therefore, entitled to compensation. Defendants also advance arguments to show that, if compensation was due, the signing of the checks by defendants was sanctioned by the controlling provisions of the constitution of the union.

In order to decide the various motions and cross-motions, it becomes necessary to decide whether Local 88 shall be allowed to intervene in this suit and submit common answer with and on behalf of the individual defendants. The determination of this question controls the request of plaintiff that the defendants, and all persons in participation with them, be enjoined from allowing Local 88 to furnish counsel or counsel fees for these defendants. These questions must be decided first for if plaintiff's relief is granted and defendant's request to intervene and file an answer is denied, the motions for dismissal and/or summary judgment on behalf of defendants and intervenors is not properly before this court. The intervenors and their counsel must first establish that they have a right to be parties in this suit.

The question of whether Local 88 can intervene or supply counsel to defendants in this case presents serious questions involving the interpretation of 29 U.S.C.A. § 501(b). Plaintiff maintains that under the authority of Highway Truck Drivers and Helpers Local 107 v. Cohen et al., 182 F.Supp. 608 (E.D.Pa.1960), aff'd 284 F.2d 162 (3d Cir., 1960), cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), the union is not entitled to furnish counsel to defendants for the pur-

poses of this suit. However, as counsel for defendants points out, the district court in the Cohen case, supra, was careful to limit its holding as applying to the particular factual circumstances in that case which, admittedly, involved conduct on the part of the individual defendants which was in gross violation of their fiduciary duty to the union. It is also true that the Cohen case involved a payment of legal fees, while in the instant case the union requests the right to intervene since it contends that its cause is common with that of defendants. Treating the last point first, this court cannot adequately determine whether there is any merit in the distinction based upon the intervention until it has determined whether the interests of the individual defendants is in conflict with the union. Surely, given circumstances where the interests of the union and defendants conflict, the rationale of the Cohen decision would not be limited to non-payment of counsel fees. In Mochetta v. Cross, 43 C.C.H.Lab.Cas. 24,892 (D.C.D.C.1961) and Alvino v. Bakers and Confectionary Workers' International Union of America, (D.C.D.C.1961), the court decided under the authority of the Cohen case supra, that union counsel shall not be allowed to represent individual defendants in cases of this type. This court agrees with the conclusion of the Mochetta and Alvino cases, supra, for the salutary effects of the rule in the Cohen case could always be avoided if union counsel were simply allowed to represent the defendants, as an alternative to the payment of counsel fees.

In the instant case the question presented is whether the desire of the union to intervene is significantly different from the situation where the union attempts to supply counsel to the defendants. In approaching this question, the court recognizes that situations may arise where the union has an independent reason for intervention. Thus, a blanket condemnation of intervention in cases of this type is not warranted. However, in the instant case, it seems clear that the union has no interest other than the pro-

tection of the two defendants. Indeed, the proposed intervenors urge that they desire to respond to the complaint with common answer for defendants, and the union.

Furthermore, if some conflict develops between the individual defendants and the best interests of the union later in this litigation, it is hard to imagine how union counsel who will be serving both defendants and the union can adequately protect the union's interests.

Counsel for the proposed intervenors earnestly contended during the argument and in briefs that this case would be defended at no extra cost to the union since counsel is paid on an annual retainer. The court does not accept this argument as persuasive. Although cost to the union is a factor, more important is the idea that in a suit of this type a person who is charged with a violation of his fiduciary responsibility to the union should not be given the opportunity to overwhelm his opponent by putting at his disposal the power and resources of the union. The evils which § 501 was designed to cure would often continue unchecked if a union official was to be permitted to use the power of the union to protect himself whenever he is accused of a wrongful act. It could very well be that the officer so charged with the offense is in a position to control the union machinery. This court is of the opinion that procedural device of intervention which the union seeks to employ should not be granted if the charges alleged in the complaint demonstrate that the interests of the union are in conflict with those of the defendant.

In the Cohen, Mochetta and Alvino cases, supra, it is clear that the courts believed that this finding was extremely important. In making this determination, it would appear necessary for this court to make some preliminary inquiry as to the nature of plaintiff's complaint, and whether on the affidavits presented in support of the motions the plaintiff has set forth a legally sufficient claim based upon the bona fide issues of fact. This does not mean that the court will be de-

ciding defendant's motions for dismissal and for summary judgment. Rather, this kind of preliminary inquiry is similar to that performed by the court on any motion for injunctive relief.

The procedure which the court deems appropriate in this type of case would be to determine whether plaintiff has made a substantial showing that he has a claim and is likely to succeed, and that the alleged conduct of defendants conflicts with the interests of the union. Secondly, since the injunctive relief incorporates a restraint of the union, the court must determine that the relief requested is calculated to effect the congressional purpose of the statute, while not unduly injuring defendants and the potential intervenors in the event that the claims of the plaintiff are not sustained later.

It appears that the plaintiff has set forth sufficient uncontroverted facts to support the allegations in the complaint to the effect that the two individual defendants may have acted improperly in signing the two checks hereinabove described and that the best interests of the union in this case could be in conflict with those of the individual defendants.

Plaintiff advances two basic contentions to support his charges concerning conduct on the part of the defendants. First, he asserts that Gaier and Fowler did not work the weeks for which they were paid. This issue cannot be determined from the conflicting affidavits of the parties. Alternatively, plaintiff asserts that defendants had no authority to sign checks and, therefore, they had no power to make the payments in question whether the two men worked or not. The papers submitted in behalf of the proposed intervenors attempt to avoid this charge by arguing that the Supreme Court in Queens County held that the provisions of the old union constitution were in effect until January 1, 1962 and the defendants did have the power to sign checks under the provision of that constitution. However, after reading the opinion of Mr. Justice Tessler, referred to above, submitted by the parties in support of this motion, this court concludes

that the court did not indicate that the provisions of the old constitution were in effect. What the New York Supreme Court did hold was that the provisions of the new constitution and by-laws relating to the election processes and positions of officers shall be effective for the term of office commencing January 1, 1962. As indicated above, the court reasoned that since Patrolmen Fowler and Gaier were discharged prior to January 1, 1962, and since new patrolmen were chosen prior to that date, the selection of patrolmen would be governed by the provisions of the old constitution and pursuant to it the Executive Board had ultimate power to make the selection. The court did not suggest in its opinion that the powers and duties of the several officers of the union would not be governed by the new constitution until January 1, 1962. There is no warrant for the assumption made by the intervenors that Sheldon and Scavo did have the power to sign checks. If such an interpretation of the various constitutional provisions is correct, this will, of course, of necessity have to be determined at the trial of this matter but at this point plaintiff has set forth a prima-facie case. Alternatively, the intervenors argue since Holdeman absented himself from his desk that by this action he conferred power upon Sheldon and Scavo to sign checks under the provisions of the new constitution. From the moving papers it is apparent that Holdeman denies this contention and, if anything, the inference to be drawn from the facts and circumstances are that Holdeman was embroiled in this conflict during the past months and was available for such signature. His failure to sign such checks did not result from his absence from his office but rather his belief that Gaier and Fowler were not entitled to payment.

In view of these circumstances, the court is of the opinion that from all the papers submitted in support and in opposition to these motions, there are reasonable grounds for asserting the allegations set forth in the complaint. If defendants were not authorized to sign checks, it is no answer to the charges that the two patrolmen were entitled to compensation and, of course, there is no reason to assume that plaintiff may not prove all the charges alleged. Defendants urge that § 501(b) was not designed to cover this type of impropriety but rather only gross conflicts of interests. The court does not agree with this interpretation. An examination of committee reports and other statements revealed in the statutory history preceding the enactment of this law make clear that Congress thought it fundamental that the officers of the union should act only in conformity with the constitution and bylaws of the union, and that even the general membership must also act in conformity with controlling constitutional provisions and bylaws. See U.S.Code Cong. and Adm.News, pp. 2318–2514 (1959). It is also clear that intervenors' argument that this section was not designed to regulate expenditures is erroneous. Statements of this nature were made by various legislators in an effort to clarify that this statute was not designed to regulate the purposes or social objectives for which union funds may be spent. [See 105 Cong.Rec. 17872 Sept. 3, 1959; 105 Cong.Rec. 17900 Sept. 3, 1959, and U.S.Code Cong. and Adm. News, pp. 2479–2480 (1959).] There was no suggestion that conduct of union officials inconsistent with the union's internal regulations was outside the reach of the statute. Indeed, many of the abuses which the statute was designed to correct grew out of a disregard for applicable union regulations; in other words, union officers directing the union's affairs according to their personal desires.

It is also of little effect to argue as the intervenors do, that because defendants are not charged with receiving the benefits of their improper acts, there is no basis for this action. This argument appears to be inconsistent with the statutory history as well as the language of the section. 29 U.S.C. § 501(a) provides:

"(a) The officers, agents, shop stewards, and other representatives

of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitutions and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

■ Intervenors read this statute as if the phrases

"to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. * * *"

modify all the duties imposed in the statutory language which comes before these words. This court does not agree. Each phrase imposes a separate duty and it is clear that there is a duty to expend funds in accordance with the constitution and bylaws of the union. Furthermore, as indicated in the Cohen case, these duties were not designed to exempt state law, but rather to build upon it. Recently, the State of New York adopted legislation which covers the acts alleged in this complaint. See N.Y. Labor Law, McKinney's Consol.Laws, c. 31, § 722, subd. 3, § 725, subd. 3.

■■ Thus, considering all the circumstances presented by the moving papers together with the allegations of the complaint, it appears to this court that there is a serious question of conflict inherent in the conduct of the two individual defendants and the interests of the union, and that the union should not be allowed to intervene in this action. Furthermore, the court is of the opinion that granting the injunctive relief will not unduly penalize the defendants. In the event that defendants are successful in proving the contentions which they have urged herein, there is no reason why the union may not reimburse them for legal expenses incurred in the defense of this suit.

■■ Only one other point advanced by intervenors needs mention. Intervenors have contended that Holdeman had no right to bring this suit since he has not exhausted his remedies within the union. Conceivably, if this argument were correct, it might be a decisive factor in determining whether the union should be allowed to intervene since defendants would then be defending a suit which admittedly would not state a cause of action at this time. The court is unable to pass upon this contention for two reasons. First, the papers submitted by the intervenors and defendants fail to set forth all significant portions of the union's constitution and bylaws which delineate what internal remedies are available. Thus, these parties have failed to support the contention they now advance. Second, the court rejects this interpretation of § 501 as a matter of law. Inter-

venors argue that § 101(a) (4), 29 U.S. C.A. § 411(a) (4), of the same act requires the exhaustion of internal remedies and that this is similarly a prerequisite to a showing of good cause under § 501(b). Intervenors rely upon Penuelas v. Moreno (S.D.Cal.1961) 198 F.Supp. 441, in support of their view. This court sees no warrant for engrafting this requirement on § 501(b), which provides:

> "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. * * *"

This language sets forth the conditions precedent for instituting this type of suit without the necessity of exhausting remedies available within the union. The court which makes the determination as to whether good cause has been shown may take this factor into consideration, but there is no reason to interpret the statute as making this circumstance alone determinative of the right to bring suit. If anything, the fact that Congress made specific reference to exhaustion of internal remedies under § 101(a) (4), 29 U.S. C.A. § 411(a) (4), and adopted a different procedure under § 501(b), both sections being enacted at the same time as part of a comprehensive revision of the labor law, leads to the conclusion that the concept of first exhausting internal remedies was knowingly omitted.

For these reasons the motion of the plaintiff for a preliminary injunction is granted, and the motion for an order permitting Local 88 to intervene is denied.

The parties are directed to settle order within ten days of the filing of this memorandum. The time for the defendants, Lloyd W. Sheldon and Frank T. Scavo, to submit their answers to the complaint will be extended until twenty days after the settlement of an order consistent with this memorandum.