Donald K. FRANTZ, Sr., Edward J. Ward, Jr., Donald Geraghty, Thomas J. Rice, Anthony Scavone, Edward M. Mulheran, Gerald Rooney and Bob Roberg, Plaintiffs,

v.

SHEET METAL WORKERS UNION LOCAL NO. 73, William G. Black, John E. Wehlling, Walter Elliott, John Gilhooly, Paul Komarec, Thomas Roach, and Thomas Maxwell, Defendants.

No. 78 C 5118.

United States District Court, N. D. Illinois, E. D.

May 10, 1979.

Berman & Landrum, Herbert M. Berman, Chicago, Ill., for plaintiffs.

Michael Daley, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

Plaintiffs, members of Local No. 73 of the Sheet Metal Workers Union, bring this action against their union and certain of its officers for alleged breach of fiduciary duties owed the members under the Labor-Management Reporting and Disclosure Act,

29 U.S.C. §§ 401, *et seq.* Jurisdiction is invoked under 29 U.S.C. § 501(b). The cause is before the court on plaintiffs' application for leave to file this suit. For the following reasons, the application is denied.

## I.

The allegations of the verified complaint are as follows. On June 12, 1978, defendants union and William G. Black, its president, were indicted in this district for allegedly aiding and abetting violations of the antitrust law in the sheet metal phase of construction on public projects by certain firms and individuals. *United States v. Climatemp, Inc., et al.,* No. 78 CR 388, Indictment, Ct. I, ¶¶ 4–5, 12 (N.D.Ill., June 12, 1978). On June 15, 1978, the union's Executive Board, whose members are all named as defendants in this suit, authorized payment of legal fees and expenses for both the union and Black in connection with the indictment. At a regular union meeting on October 6, 1978, Black addressed the members present, stating that he had entered a plea of not guilty to the indictment and that he was, in fact, not guilty. At the meeting, the minutes of the Executive Board meeting of June 15, 1978 were read and approved. The complaint alleges that the disbursement of union funds for Black's

legal fees and expenses is inconsistent with the union constitution[1] and violates 29 U.S.C. § 501(a). By letter received on December 18, 1978, plaintiffs requested the union officers and Executive Board to file suit against Black to recover the funds and obtain an accounting. On December 22, 1978, plaintiffs filed their application for leave to file this action, along with a copy of their proposed verified complaint and proof of demand.

Defendants oppose the application on numerous grounds. They argue that Executive Board members are not proper parties; that plaintiffs have failed to exhaust applicable statutory[2] and mandatory internal union remedies[3] before filing this suit; that plaintiffs have not allowed the union adequate time to respond to their demand that suit be filed against Black; and that plaintiffs have failed to make a showing of good cause required by § 501(b). The court agrees that plaintiffs have not satisfied the good cause requirement. The remainder of defendants' arguments are unpersuasive.

## II.

### A.   Proper Parties

■ Under § 501(b), an action may be brought against any "officer, agent, shop

---

1. Article X, section 13 of the union constitution provides, in pertinent part

   The money and property of a local union shall be used solely for the benefit of the local union and shall be used only for such purposes as are permitted or required by this Constitution and not for the personal gain or profit of any officer or member. The officers, agents, representatives and employees of local unions who handle its funds and property shall be held to this standard of conduct and accountable for any breach thereof under this Constitution and the officers of each local union shall manage, invest and expend its funds in accordance with the applicable provisions of this Constitution, and any action taken by the membership of the local union not inconsistent with this Constitution or the approved by-laws of the local union.
   Section 14 provides:
   Except for taxes, fees and obligations due this Association, no bills or obligations shall be paid from the funds of local unions except by vote of the membership and upon an order

   drawn on the Financial Secretary-Treasurer signed by the President and Recording Secretary of the local union, provided, however, that initial approval of commitments for salaries, rent, telephones and similar recurring expenditures required in the normal and regular operation of the union shall be sufficient compliance with this Section, but such expenditures shall be itemized in the report of the Financial Secretary-Treasurer and read at the meeting.

2. 29 U.S.C. § 411(a)(4).

3. Article XIX of the union constitution allows any member whose constitutional rights have been violated by any local union or union officer to appeal, first to the General President, then to the General Executive Council, and finally to the General Convention. Section 9 of article XIX provides that no member "shall appeal to the Civil Courts for redress until all of the internal remedies provided in this Constitution, including the right of appeal, have been exhausted."

steward, or representative" of any labor organization alleged to have violated the fiduciary duties imposed by § 501(a)[4] and to have failed to rectify the violation upon request by a member of the labor organization. The terms "officer, agent, shop steward" and "representative" are defined in 29 U.S.C. § 402(q) as including

> elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority) . . . .

Article XIV of the union's constitution provides that the local union's Executive Board "shall consist of the president, vice-president, recording secretary and such additional members as may be decided by the local union. . . ." and charges the board with various administrative obligations, including assisting and advising the business manager and representative in matters requiring immediate attention between meetings. The complaint here alleges that the Executive Board authorized payment of Black's legal fees and expenses. The provisions of article XIV, coupled with allegations of the exercise of power to authorize expenditure of union funds, demonstrate that the Executive Board members fall within the statutory definition of "officer, agent, shop steward or representative". The members of the Executive Board occupy positions of trust with fiduciary responsibility to the local union; they may properly be named as defendants in this action. *See McCabe v. International Bro. of Elec. Wkrs Local U. No. 1377*, 415 F.2d 92, 95–96

(6th Cir. 1969); *Aho v. Bintz*, 290 F.Supp. 577, 579 (D.Minn.1968).

However, § 501(b) does not provide for an action against a labor organization, but only for such an action against an "officer, agent, shop steward, or representative" of such an organization. *Head v. Brotherhood of Railway, Etc. Emp. (BRAC)*, 512 F.2d 398, 398 n. 1 (2d Cir. 1975); *Aho v. Bintz*, 290 F.Supp. at 579. Accordingly, as to the union, leave to file this suit must be denied.

B.  Exhaustion of Remedies

■  Under 29 U.S.C. § 411(a)(4), labor organizations are forbidden to limit their members' right to institute judicial actions, whether or not the organization is named in such an action,

> *[p]rovided*, [t]hat any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.

Defendants contend that the proviso of § 411(a)(4) requires that plaintiffs exhaust the appeals procedures of article XIX of the union's constitution. Plaintiffs argue that § 411(a)(4) does not apply to suits brought under § 501(b). The court agrees.

It is true that, on its face, the statute speaks of "an action in any court" and appears to be limited in no way. *See Ross v. International Broth. of Elec. Workers*, 544 F.2d 1022, 1024 (9th Cir. 1976). And some courts have concluded that the exhaustion of remedies of § 411(a)(4) is a

---

4.  Section 501(a) provides:

The officers, agents, ship stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

prerequisite to jurisdiction under § 501(b). *E. g., Penuelas v. Moreno,* 198 F.Supp. 441, 445 (S.D.Cal.1961). Other courts have rejected this analysis and concluded that the fact the § 411(a)(4) makes specific reference to exhaustion of internal union remedies while § 501(b) mandates different procedures, although both were enacted at the same time as part of a comprehensive reform of the national labor laws, leads to the conclusion that the exhaustion remedy was deliberately omitted from § 501(b). *E. g., Purcell v. Keane,* 406 F.2d 1195 (3d Cir. 1969); *Holdeman v. Sheldon,* 204 F.Supp. 890, 896 (S.D.N.Y.), *aff'd per curiam,* 311 F.2d 2 (2d Cir. 1962); *see generally* Clark, *The Fiduciary Duties of Union Officials Under Section 501 of the LMRDA,* 52 Minn. L.Rev. 437, 467–68 (1967). The court finds the latter analysis more persuasive.

Even if § 411(a)(4) were to be held applicable to this action, its exhaustion requirement is stated in permissive, not mandatory, terms and " 'allows the courts in their discretion to determine whether pursuit of such remedies is required.' " *Keeffe Bros. v. Teamsters Local U. No. 592,* 562 F.2d 298, 303 (4th Cir. 1977). For example, administrative exhaustion may be excused where the right of appeal would be inadequate, illusory or futile. *Verville v. International Ass'n of Mach. & Aero Wkrs.,* 520 F.2d 615, 621 (6th Cir. 1975); *Steib v. New Orleans Clerks and Checkers, Local No. 1497,* 436 F.2d 1101, 1106 (5th Cir. 1971). Defendants' memorandum in opposition to plaintiffs' motion for leave to file a complaint suggests that since the action was filed, defendant Black has again presented the Executive Board's position to the membership for approval and the Board has indicated its intention to adhere to the decision of June 15, 1978 and there seems to be no likelihood of a change in union policy. Under these circumstances, even if § 411(a)(4) were applied to this action, it would be appropriate to excuse exhaustion of internal union remedies.

## C. Demand to Sue

█ It is a prerequisite to any action under § 501(b) that "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization . . . ." It is uncontested that plaintiffs have made a demand on defendants by their letter which defendants received on December 18, 1978. Defendants urge, however, that the filing of the complaint on December 22, 1978 was premature and that they have not been allowed a "reasonable time" to determine whether to take any action against Black.

The argument is disingenuous. The procedural prerequisites of § 501(b) were designed to prevent the filing of harassing and vexatious suits brought without merit or good faith against union officials. *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1253 (3d Cir.), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972). But a review of plaintiffs' efforts in seeking action and defendants' response does not present a picture of deliberate harassment. According to defendants' memorandum, a membership meeting was held after receipt of plaintiffs' demand at which Black again presented the Executive Board's position and informed the membership of the name of his attorney and the amount of fees paid to him thus far. There can be no doubt that plaintiffs made a sincere effort to obtain compliance and that defendants not only had adequate time to respond, but did in fact respond. The Executive Board and Black have indicated that they believe they are acting in compliance with the law and the union constitution. The court notes that the demand requirement of § 501(b), like that of Rule 23.1, Fed.R.Civ.P., does not mandate a request where the request would be an idle ceremony. *McNamara v. Johnston,* 522 F.2d 1157, 1162–63 (7th Cir. 1975); *Hood v. Journeymen Barbers, Hairdressers, Etc.,* 454 F.2d 1347, 1354 n. 23 (7th Cir. 1972). Further demand here would be futile; there is no need to allow the defendants more time; they have already responded to plaintiffs' demand.

## D. Good Cause

■ Defendants urge that plaintiffs cannot comply with the good cause requirement of § 501(b) because since the union and Black were indicted together, the legal fees are being paid to defend Black in his capacity as president of the union.

The requirement that plaintiff obtain leave of court upon good cause shown in order to proceed with this lawsuit is an unusual one and courts have had to face the difficult question of defining good cause. In *Horner v. Ferron*, 362 F.2d 224, 229 (9th Cir.), *cert. denied*, 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966), the court analyzed the good cause requirement and stated

[I]f the defendant can establish, by undisputed affidavit, facts which demonstrate that the plaintiff is not a member of the defendant union, or that the action is outlawed by a statute of limitations, or that the action cannot succeed because of the application of the principles of *res judicata* or collateral estoppel, or that plaintiff has not complied with some controlling condition precedent to the bringing of such a suit, then although these defects do not appear on the face of the complaint, they may warrant ·denial of the application.

However, we think it inappropriate to consider . . . defenses which require the resolution of complex questions of law going to the substance of the case. Defenses of this kind should be appraised only on motion for summary judgment or after a trial. Defense which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure, are a *for-tiori*, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed. Defenses involving disputed questions of fact should be appraised only after a trial at which the parties and the court can have the benefit of a complete inquiry, assisted by such pre-trial discovery as may be undertaken.

It is not enough that the complaint state a claim upon which relief might be granted. Rather, the good cause requirement should be construed to mean that "plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence." *Dinko v. Wall*, 531 F.2d 68, 75 (2d Cir. 1976).

Applying these standards to this action, the court concludes that plaintiffs have not satisfied the good cause requirement. The expenditure of union funds accruing to the personal benefit of union officers must be carefully scrutinized under § 501 even where, as here, that expenditure has been authorized. *Brink v. DaLesio*, 453 F.Supp. 272, 278 (D.Md.1978). And where the official has been indicted for corruption in his union duties, it has been held improper for a local union to pay attorney fees incurred by the official in defending the indictment. *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608, 617–22 (E.D. Pa.), *aff'd*, 284 F.2d 162 (3d Cir. 1960), *cert. denied*, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). The *Cohen* decision recognizes that

[t]here are undoubtedly situations in which a suit against a union officer would have a direct and injurious effect upon the union itself or would in reality be directed at the union. In such a situation the union would have the power to lend its financial support to such officer.

182 F.Supp. at 620.

This is such a situation.

The court begins by taking judicial notice of the content of the indictment involved. Of course, "the power of a court to take judicial notice of its own records is amply established by a multitude of cases." 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2410, at 359 (1971); *e. g., United States Fidelity and Guaranty Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir.), *cert. denied*, 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964). The indictment in *United States v. Climatemp, Inc., et al.*, No. 78 CR 388 (N.D.Ill., filed June 12, 1978), alleges in Count I:

¶ 4. Sheet Metal Workers, International Association, Local 73, is hereby indicted and made a defendant herein. Sheet

Metal Workers International Association, Local 73, has its principal office in Chicago, Illinois, and is an affiliate of Sheet Metal Workers, International Association whose office is located in Washington, D. C. During all or part of the period charged in this indictment, and within five years next preceding the return hereof, Sheet Metal Workers, International Association, Local 73 provided workers in parts of the Chicago area to sheet metal contractors, including the defendant corporations.

¶ 5. William Black is hereby indicted and made a defendant herein. During part of the period charged in this indictment, and within five years next preceding the return hereof, he was president of Sheet Metal Workers, International Association, Local 73.

\* \* \* \* \* \*

¶ 12. From at least 1963 and continuing thereafter into at least 1976, the exact dates being unknown to the grand jurors, the defendants and co-conspirators have engaged in a combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. William Black and Sheet Metal Workers, International Association, Local 73 aided, abetted, counseled and induced said combination and conspiracy in violation of 15 U.S.C. § 1 and 18 U.S.C. § 2.

The conspiracy alleged is one between thirty firms and individuals to allocate among themselves the sheet metal phase of construction on public projects in the Chicago area and to submit collusive, non-competitive bids for work to be done on public projects in the Chicago area. Except in the paragraphs quoted in full above, Black and the union are not mentioned in the thirteen count indictment.

An examination of these allegations and a fair-minded reading of the indictment as a whole suggests that Black is charged with acts done in his capacity as union agent and that the union's criminal liability, if any, is based on Black's actions. Under these circumstances, the court concludes that the criminal suit against the officer has a direct and injurious impact upon the union and is, in reality, directed at the union. Indeed, a comparison of this action with other cases indicates that courts have blocked payment of union officials' attorney fees where the fees are incurred to defend charges of mishandling union funds. *See, e. g., Milone v. English*, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962); *Brink v. DaLesio*, 453 F.Supp. at 279; *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. at 617–22. In those cases, it was proper to apply the general rule that "funds of a union are not available to defendant officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership." *Milone v. English*, 306 F.2d at 817. In this case, it is not.

Because the court concludes that the criminal action is, in reality, directed at the union, it follows that plaintiffs cannot satisfy the good cause requirement of § 501(b) because they cannot show a reasonable likelihood of success. *Dinko v. Wall*, 531 F.2d at 75. For this reason, plaintiffs' application for leave to file this suit is denied. Additionally, as to the union, leave to file the suit is denied because the union is not a proper party.

So ordered.