689 F.2d 40
 111 L.R.R.M. (BNA) 2323, 95 Lab.Cas. P 13,781
 John J. URICHUCK, Appellee,
v.
George CLARK, Robert Gannone, Vincent Longo, Stanley Paduch,
Bernard O'Brien, John Ernst, John Mackay, Raymond
Eganey, George Ernst, Jr. and Thomas
Lesinski, Appellants.
 No. 81-2717.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1982.
Decided Sept. 14, 1982.
 
 1
 Theodore E. B. Einhorn (argued), Einhor, Harris & Platt, Denville, N. J., for appellants.
 
 
 2
 John J. Coyle, Jr. (argued), Arthur D. Fialk, Phillipsburg, N. J., for appellee.
 
 
 3
 Before ADAMS and WEIS, Circuit Judges, and BLOCH*, District Judge.
 
 OPINION OF THE COURT
 
 4
 BLOCH, District Judge.
 
 
 5
 William J. Koenig, a dissident union member, filed suit against his union, Local 455, United Brotherhood of Carpenters and Joiners of America, its international, and numerous union officials. Koenig v. Clark, et al., No. 79-2209 (D.N.J., filed July 24, 1979). Koenig alleged the defendants violated his right to freedom of speech and assembly as protected by Title I, the bill of rights provision, of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(2). Subsequently, John J. Urichuck, another union member, filed suit under Title V of the LMRDA, 29 U.S.C. § 501(a), to prohibit the joint representation of the union and individual union officers and to prohibit union payment of the officers' counsel fees in the Koenig suit. The district court granted Urichuck's motion for summary judgment, and the union defendants have appealed. We reverse.
 
 
 6
 * Koenig asserted in his complaint that certain retaliatory action was taken against him after he had expressed concern about the operation of the union's pension and welfare funds; questioned the procedure utilized in an attempt to adopt certain amendments to the union's by-laws; and sought financial information related to the union and some of its members. Two of the defendants, Koenig alleged, brought unfounded charges against him before the local. Other defendants wrote a letter to the international charging him with being a contractor in the year next preceding his election as vice-president of his local, a charge which resulted in his disqualification and ouster from office. Others willfully and maliciously failed to exercise the power and duties of their offices in investigating and reporting the results of their investigation of this charge. Others, he alleged, induced an employer to lay him off, and others improperly administered the union's work referral list, so that he received less job opportunities than he was entitled to.
 
 
 7
 All defendants were initially represented by a single attorney in the Koenig case and the union paid his fees.
 
 
 8
 One year after Koenig filed his complaint, this action was filed by another member of Local 455, claiming that the joint representation of the union and individual defendants violated Title V of the LMRDA. Title V provides at 29 U.S.C. § 501(a) that a union official must:
 
 
 9
 "... hold its money and properties solely for the benefit of the organization and its members, ... manage, invest and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies thereunder ... and ... account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization."
 
 
 10
 29 U.S.C. § 501(a).
 
 
 11
 Section 501(b) provides that when any officer has violated his duties as proscribed in § 501(a), and the union fails to sue, an individual member of the union may sue on its behalf.
 
 
 12
 Plaintiff Urichuck sought an order prohibiting joint representation of the union and individual defendants, prohibiting the union from paying for the defense of their officials, directing an accounting by the officials of the benefit already bestowed on them by the union, and directing reimbursement by the officials of the union funds thus far expended.
 
 
 13
 On plaintiff's motion for summary judgment, the lower court ordered joint representation to cease, and further prohibited the union from paying counsel fees for the individual defendants. It reserved judgment on the question of whether the individual defendants must reimburse the union for the monies already expended on their account pending the outcome of the Koenig suit. The lower court reasoned that a union may pay its officers' legal fees only if the defense of the officers would be in the interest of the union. Because the defense of the union and the defense of the individuals could be different in Koenig and because the union could be entitled to recovery against the officers if Koenig prevailed, the lower court concluded that "from the face of the pleadings there is an obvious and serious conflict of interest involved in the representation of Local 455 and the union officers by the same law firm." Appendix for Appellants, p. Aa-42.
 
 
 14
 Shortly before oral argument in this case, the court was notified that after a 6-day trial, the lower court, sitting without a jury, found in favor of eight of the ten individual defendants. However, regarding that part of the case related to the removal of Koenig from his position as vice-president of the local, the court found in favor of the plaintiff and against the defendant local, and defendants Robert Gannone, local president, and George Clark, local business representative.
 
 II
 
 15
 A union may not provide counsel for its officers in a suit brought against them if the interest of the union and its officers in the outcome of the case may be adverse. Conflict of interest between a union and its officers is most clearly apparent in a suit brought pursuant to Title V of the LMRDA charging union officers with pilfering union funds. In Highway Truck Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608 (E.D.Pa.1960), aff'd., 284 F.2d 162 (3d Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), nine rank-and-file members of Teamsters Local 107 brought suit against their union's governing officers charging them with a continuing mass conspiracy to cheat and defraud the union of large sums of money. The union voted almost unanimously to bear the legal costs of the defendant officers. Faced with a motion by the plaintiffs for a preliminary injunction to prohibit defendants from using union funds to pay their counsel, the court commented, "To allow a union officer to use the power and wealth of the very union which he is accused of pilfering, to defend himself against such charges, is totally inconsistent with Congress' effort to eliminate the undesirable element which has been uncovered in the labor-management field."
 
 
 16
 Similarly, in Tucker v. Shaw, 378 F.2d 304 (2d Cir. 1967), the union counsel was disqualified from representing officers charged with, among other things, misappropriating union funds for their own benefit. And in Holdeman v. Sheldon, 204 F.Supp. 890 (S.D.N.Y.1962), aff'd., 311 F.2d 2 (2d Cir. 1962), a union's motion to intervene so it might provide joint representation for defendants charged with paying two non-union employees with union funds was denied.
 
 
 17
 Appellants argue in this case that the principle enunciated in these Title V actions has no relevance in a Title I suit, such as Koenig. They contend that Title V was designed to protect the union from unscrupulous officers, and that Title I was designed to protect individual members from their union. Thus, a suit brought pursuant to Title V is actually brought on behalf of the union, while a Title I action is necessarily brought against the union, even when nominally brought against its officers, by individuals on their own account.
 
 
 18
 We could accept appellants arguments only if we could imagine no case in which union officers could be guilty of a Title I violation without vicarious liability flowing to the union. The actions of union officers are tested by common law theories of agency, Shimman v. Frank, 625 F.2d 80 (6th Cir. 1980)); Aguirre v. Automotive Teamsters, 633 F.2d 168 (9th Cir. 1980). Thus, if their actions fall within the scope of their authority, they are acting for the union and whatever liability flows from their actions flows to the union also. However, if their illegal actions fall without the scope of their authority, they must bear the consequences alone.
 
 
 19
 If a union is sued for a Title I violation actually committed by its officers, it may defend on the basis that its officers did not do what they are charged with doing, or that what they did does not constitute a breach of Title I obligations. Or the union may defend on the basis that its officers were acting outside the scope of their authority and, therefore, that the union, at least, is not liable to the plaintiff. In the latter instance, surely the interest of the union and the interest of its officers in the outcome of the litigation is adverse.
 
 
 20
 We do not believe that the fact that the union and its officers may be all held jointly and severally liable in a Title I suit, and that the union could thereafter have a cause of action against the officers for contribution is a sufficiently adverse interest to mandate separate counsel. If a union found liable with its officers in a Title I suit paid the judgment and failed to seek contribution from its officers, a Title V action could then be brought to vindicate the union's claim against its officers.
 
 
 21
 If a trial court is confronted with a claim similar to what appellee's claim was before the trial court in this case, it should subject the Title I pleadings to close scrutiny to determine if the defense that the co-defending officers acted ultra vires is realistically available to the union. The fact that such a defense is not pleaded by the union is, of course, not dispositive, since union counsel may have been influenced by his dual loyalty to his individual clients.
 
 
 22
 The Court in this action is in an obviously better position at this time to analyze the underlying suit than the lower court was at the time it rendered its earlier opinion. As to those individual defendants who were not found liable to the plaintiff in Koenig, the union is, of course, now free to reimburse them for their counsel fees, if it so desires. Highway Truck Drivers, supra at 622. The same is true as to those individual defendants who were found liable to the plaintiff, since the verdict against the union, in addition to the individuals, indicates that they were found to be acting on behalf of the union.
 
 
 23
 For the reasons enunciated above, the judgment of the district court will be reversed.
 
 
 24
 WEIS, Circuit Judge, concurring.
 
 
 25
 As the majority opinion points out, there is an important difference between Title I and Title V actions. A Title V suit is a derivative action by a union member on behalf of the organization, which is alleged to be the victim of wrongful conduct by a union officer. In such a case, it would truly be adding insult to injury to permit the union treasury to finance the defense of an individual accused of misusing union funds.
 
 
 26
 But in a Title I suit, like the Koenig case, the situation is quite different. The plaintiff alleges that the union, through officers acting within the scope of their authority, has deprived him of his statutory rights as a member of a labor organization. The union has the same interest in defeating the plaintiff's claim as does its officers, since the best way for all of the defendants to avoid liability is by showing that the plaintiff's allegations against the individual defendants are baseless. A viable ultra vires defense is not likely and, in this case, not possible. Therefore, there is no conflict of interest in joint representation.
 
 
 27
 In granting Urichuck's motion for summary judgment, the district court ruled that the union may not reimburse the individual defendants in the Koenig case for their legal expenses until the allegations against them have been resolved. The court commented that "if the charges against the union officers in the Koenig case are true, the officers are not entitled to payment of their legal costs. Clearly a union should have no interest in defending against meritorious claims that those in positions of power have unlawfully encroached upon a union member's protected rights." This analysis overlooks the fact that the Koenig suit is against the union itself as well as the officers. See Highway Truck Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608, 620 (E.D.Pa.), aff'd, 284 F.2d 162 (3d Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). Even if liability were clear, which the union denies, there still would be the defendants' common interest in contesting the amount of damages.
 
 
 28
 The district court also did not take into account the affidavit submitted by defendant George Clark, the union business agent. Clark described this suit as a political and personal vendetta against him and the other defendants. He stated that Urichuck is a close ally of Koenig, who is a political opponent of the defendants in union affairs. Twice, Koenig filed charges against Clark with the National Labor Relations Board which were dismissed. Clark characterized these lawsuits as an attempt by plaintiffs to win in court what they could not win at the union ballot box.
 
 
 29
 On plaintiff's motion for summary judgment, the averments in Clark's affidavit must be accepted as true. The district court erred, therefore, because Urichuck failed to show that in the Koenig suit the interests of the union conflicted with those of the individual defendants. See Holderman v. Sheldon, 204 F.Supp. 890, 893 (S.D.N.Y.), aff'd, 311 F.2d 2 (2d Cir. 1962). As Clark pointed out, Koenig's suit alleged that the individual defendants had deprived him of his rights, but never accused the defendants of acting for personal gain at the expense of the union.
 
 
 30
 The union's interest in joint representation in a Title I suit, such as Koenig, also deserves consideration. To require separate counsel can deplete the union treasury because the officers who are absolved from wrongdoing are entitled to reimbursement by the union. Obviously, it is more economical for union counsel to represent the individual defendants initially than it is for the union to ultimately bear the duplicative costs of separate counsel.
 
 
 31
 The expense of retaining separate counsel would also discourage rank-and-file members of ordinary means from seeking union office. As Clark noted in his affidavit, he is the only defendant who is paid more than $600 per year by the union. A rule which imposes a formidable financial burden on union officeholders would be directly contrary to Title I's goal of fostering union democracy.
 
 
 32
 After the Koenig suit was filed, the membership of Local 455 adopted a resolution authorizing the union to pay for the officers' legal expenses. Urichuck has advanced no reason why we should not respect that decision. See, Comment, "Counsel Fees For Union Officers Under The Fiduciary Provision Of Landrum-Griffin," 73 YALE.L.J. 443 (1964). This situation is far different from Highway Drivers & Helpers Local 107 v. Cohen, where the court disregarded a union resolution to defray its officers' counsel fees. There, the union officers were accused of pilfering the union treasury-a Title V violation.
 
 
 33
 Moreover, disciplinary Rule 5-105(C) of the Code of Professional Responsibility provides that a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure. Even under that standard, Urichuck has not shown that disqualification is required in the Koenig suit.
 
 
 34
 In short, I am persuaded that the district court erred in entering summary judgment for the plaintiff, and I therefore concur with the majority's judgment.
 
 
 
 *
 The Honorable Alan Bloch, United States District Judge for the Western District of Pennsylvania, sitting by designation