Daniel MULLIGAN, Rita Jones–Rivers and Arthur Rivers, Plaintiffs,

v.

Frederick PARKER, Glenn McClain, North Suburban Illinois Area Local, American Postal Workers Union, AFL–CIO, Defendants.

No. 91 C 5355.

United States District Court, N.D. Illinois, E.D.

Oct. 9, 1992.

---

J. Peter Dowd and Robert E. Bloch, Dowd & Bloch, Chicago, Ill., for plaintiffs.

Solomon I. Hirsh; and Marvin Gittler, and Barry Milton Bennett, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, Ill., for defendants.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

This internal union dispute has been intense. It has also been a moving target, with new revelations and new issues popping up as the case has progressed. The various issues have generated a number of motions, and a progression of events have, we understand, caused most of them to become moot. It is our understanding that only two issues now need to be resolved. The first is whether the union local may pay the legal expenses of the individual defendants in defending against charges of

violations of Title I and V of the Labor Management Reporting and Disclosure Act (LMRDA). The second is whether membership approval is required for payment of an outside audit previously agreed to by both plaintiffs and defendants. We answer both in the negative.

## BACKGROUND

Plaintiffs Mulligan and Jones–Rivers, elected officer and elected trustee, respectively, of the union and members of its executive board, and Rivers, all members of the defendant union, brought this action against the individual defendants Parker and McClain and against the union for compensatory and injunctive relief.

Plaintiffs' catalog of grievances is long, including claims that Parker assaulted and battered Mulligan, that the defendants interfered with plaintiffs' free speech rights, that they are in breach of their fiduciary duties, that Parker removed and replaced three union chief stewards contrary to the union constitution and the direction of the executive board, that defendants interfered both with Mulligan's discharge of his duties as a union steward and his efforts to obtain a fair hearing on his charges against Parker, and that defendants misappropriated union funds. They seek preliminary injunctive relief against the union's continued payment of the individual defendants' legal expenses,[1] and against any requirement of membership approval to pay audit expenses.

1. They also ask for repayment of the legal expenses already advanced, but that we leave to another day.

2. In *Holdeman v. Sheldon*, 311 F.2d 2 (2d Cir. 1962), the court suggested that on motions for preliminary injunction regarding expenditure of union funds, the district court should consider (1) whether the movant has shown a reasonable likelihood of success on the merits, and (2) whether the conduct of the defendants is in conflict with the interests of the union. Plaintiffs' motion for preliminary injunction satisfies this standard as well.

3. Title V suits concern the fiduciary duties of union officers. 29 U.S.C. § 501(a) of the Labor

## DISCUSSION

Before a preliminary injunction is issued the movant must show (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) that threatened injury to plaintiff outweighs threatened harm to the defendant; and (4) that granting the injunction will not disserve the public interest. *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir.1984); *see also Dos Santos v. Columbus–Cuneo Cabrini Medical Center,* 684 F.2d 1346, 1349 (7th Cir.1982).[2]

For the following reasons, we grant plaintiffs' request for preliminary injunction.

### A. *Payment of Legal Expenses of Individual Defendants Parker and McClain*

A union is customarily prohibited from paying the legal expenses of officers charged in Title V suits.[3] *McNamara v. Johnston,* 522 F.2d 1157, 1167 (7th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). In *McNamara,* the Court stated that "union officials charged as defendants in suits of this nature should retain independent counsel and bear the financial burden of their defense." *Id.* True it is that the statement was *dicta,* but it is wholly consistent with the holdings of other courts where, as here, plaintiffs show a reasonable likelihood of prevailing and the charged conduct is seriously detrimental to the union.

The rationale behind not allowing the union to pay legal expenses in Title V suits

Management Reporting and Disclosure Act of 1959 provides, in pertinent part:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its embers as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, and to refrain from dealing with such organization as an adverse party. . . .

is that if the Title V charges are proven to be true, the actions are seriously detrimental to the union and its membership. In such case the union should not bear the cost of the officers' defense. *Milone v. English,* 306 F.2d 814, 817 (D.C.Cir.1972) ("As a general proposition we think funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union."); *Frantz v. Sheet Metal Workers Union, Local 73,* 470 F.Supp. 223, 229 (N.D.Ill.1979) ("under these circumstances, the court concludes that the criminal suit against the officer has a direct and injurious impact upon the union and is, in reality, directed at the union. Indeed, a comparison of this action with other cases indicates that courts have blocked payment of union officials' attorney fees where the fees are incurred to defend charges of mishandling union funds.") *Highway Truck Drivers and Helpers, Local 107 v. Cohen,* 182 F.Supp. 608, 621 (E.D.Pa.1960), *aff'd* 284 F.2d 162 (3d Cir.1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961) ("To allow a union officer to use the power and wealth of the very union which he is accused of pilfering to defend himself against such charges, is totally inconsistent with Congress' efforts to eliminate the undesirable element which has been uncovered in the labor management field."). Similarly here, the allegations against Parker and McClain involve, *inter alia,* the breach of fiduciary duty and misappropriation of union funds, allegations which, if true, would be detrimental to the union and its members. As such, the union is enjoined from paying the legal expenses of Parker and McClain with regard to the Title V suit.[4]

The other charges against Parker and McClain regard alleged violations of Title I.[5] Whether the union may advance legal fees for suits under Title I rests on whether the officers in question were acting *ultra vires.* If the officers' actions were outside of the scope of their official authority, then a conflict of interest exists between the union and the officers and the union is prohibited from advancing legal fees to pay for their defense. *Urichuck v. Clark,* 689 F.2d 40, 43 (3d Cir.1982). Here the alleged actions of Parker and McClain in unilaterally removing stewards in excess of their authority, in refusing to abide by the union's executive board decision and in attacking plaintiff Mulligan could be considered outside the scope of defendants' union authority.

Plaintiffs contend there is no adequate remedy at law because there is no guarantee that defendants Parker and McClain could be made to pay back the legal fees advanced by the union if they are not exonerated. The financial instability that could be caused to the union meets the standard set forth in *Roland Machinery,* that the harm "cannot be prevented or fully rectified by the final judgment."[6] 749 F.2d at 386. Moreover, the harm to the union and its membership from losing access to funds which are being advanced to pay for legal expenses outweighs the harm to the defendants.[7] In asking whether the plaintiff has some likelihood of success on the merits, it "is enough that the plaintiff's chances are better than negligible." *Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119, 123 (7th Cir.1982). Here plaintiff has shown

---

**4.** Defendants argue that not allowing the union to pay the legal expenses places financial burden on union officers and opens them up to harassing litigation. However, the policy of permitting the union to reimburse the officers for successful defense provides sufficient financial protection of the officers against such suits. *Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir. 1962).

**5.** Title I actions concern allegations that union officials used their positions to retaliate against plaintiffs for speaking out against those officers.

**6.** *Roland Machinery* explains that the plaintiff does not need to show that an award of damages at the end of the trial would be "wholly ineffectual," but that it would be "seriously deficient." 749 F.2d at 386. The court cites reasons such as harm to plaintiff's business and potential insolvency of defendant as reasons to issue a preliminary injunction as opposed to damages. *Id.*

**7.** This is particularly true since the defendants can be reimbursed by the union if they are exonerated on the charges.

that they have a far better than negligible likelihood of success on at least some of their claims.[8] The motion to enjoin payment of officers' legal expenses for Title I and Title V allegations is granted.

### B. *Payment for an Outside Audit*

 The parties have agreed that the necessary records will be produced to perform an outside audit. The other issue involves whether plaintiff Rita Jones–Rivers and the other two trustees of the union must have the audit expense (which will exceed $1,000) approved by the union membership. Defendants argue that the union constitution, Article VII, Sec. 4 applies.[9] Plaintiffs, on the other hand, argue that Article VII, Sec. 10 applies.[10]

After a careful reading of the two sections in question, we hold that Section 10, which explicitly governs the actions of the trustees, is controlling. Section 10 gives the trustees considerable discretion to have the audit performed and to report the results of the audit. Section 10 does not limit the authority of the trustees by placing financial constraints on them.[11] Section 4, on the other hand, places a limitation on monies expended by the treasurer, as opposed to that authorized by the trustees. Furthermore, the reference to expenditures over $1,000 in Section 4 refers to expenditures authorized by the president or executive board, not to expenditures authorized by the trustees in accordance with their constitutional authority under Section 10. We note, as well, that 29 U.S.C. § 501(b) specifically authorizes payment of neces-

sary expenses of this nature, and we question whether an agreed audit or any required as a matter of fiduciary care can be frustrated by a membership vote. We therefore grant plaintiffs' request for a preliminary injunction preventing defendants from requiring a membership vote to authorize payment for the outside audit.

---

**8.** For instance, Parker was convicted of the assault and battery charge. Defendants now claim the costs of defending against that civil claim here has been, somehow, separately carved out and assigned to Parker.

**9.** Section 4 provides, in pertinent part:
The treasurer shall pay all fixed expenses and all special disbursements authorized by the president and/or the executive board, provided such disbursements are less than one thousand (1000) dollars and are in accordance with the objectives of this organization as provided in the Constitution. Disbursements of one thousand (1000) dollars or greater must be approved by the general membership at any regular monthly meeting.

**10.** Section 10 provides, in pertinent part:
The trustees shall have general supervision over all funds and property of the Local. They shall audit the financial records of the local within sixty (60) days after receipt of the records. They shall, at their discretion, arrange for an audit of the books by a certified public accountant. They shall, at their discretion, examine and investigate any financial transaction and report their findings to the executive board and/or the general membership at any regular or special meeting.

**11.** However, it is appropriate to note that the trustees are under a general duty of fiduciary care pursuant to 29 U.S.C. § 501(a).